## KIBBE *v.* DITTO ET AL.

The act of the general assembly of Illinois, entitled "An Act to protect married women in their separate property," approved Feb. 21, 1861, repeals, by implication, so much of the saving clause of the Statute of Limitations of 1839 as relates to married women.

ERROR to the Circuit Court of the United States for the Northern District of Illinois.

The facts are stated in the opinion of the court.

Submitted on printed arguments by *Mr. W. C. Goudy* for the plaintiff in error, and by *Mr. T. G. Frost* for the defendants in error.

MR. JUSTICE DAVIS delivered the opinion of the court.

The defendants in this action of ejectment, which was commenced March 20, 1872, for a quarter-section of land in Mercer County, Illinois, pleaded not guilty. A verdict and a judgment were rendered in their favor. The plaintiff sued out this writ of error.

William M. O'Hara, the owner in fee of the land, died intestate in the summer of 1821, leaving a widow, who outlived him less than a year, and four children, three of whom died intestate. Helen, their surviving sister, inherited their respective interests. She intermarried, Sept. 23, 1840, with Abram D. Harrel, who died Dec. 16, 1871. Said Abram and Helen, by deed executed May 2, 1868, conveyed the land to the plaintiff, who thus showed a clear *prima facie* right to recover.

By a stipulation of the parties, entered of record in the court below, it is admitted that the land was vacant and unoccupied prior to December, 1857, and that ever since that date the defendants and their grantors have been in the possession of it under color of title, and paid all the taxes, so as to bring them within the limitation of 1839; that said possession has been by actual residence on the land, if title deducible of record is produced to accompany said possession, so as to make the limitation under the act of 1835.

The defendants, to show color of title, put in evidence a deed for the land executed to them June 12, 1857, by Harding and Matthews.

Were Abram D. Harrel living, there can be no question that the facts set forth in the stipulation would be an absolute bar to a recovery. The Supreme Court of Illinois ruled that an estate held by the husband *jure uxoris* was a freehold, subject to the same incidents as that by the curtesy initiate, and governed in the same manner and to the same extent by the Statute of Limitations. *Kibbie* v. *Williams*, 48 Ill. 30. The earlier case of *Shortal* v. *Hinckley et al.*, 31 id. 219, decides that a tenant by the curtesy initiate has a vested legal estate distinct from that of his wife, and that, if his right as such tenant be barred by the Statute of Limitations, ejectment by the grantees of himself and wife could not in his lifetime be maintained. We are informed by the learned counsel for the plaintiff that the court below held that a former suit, brought there for the demanded premises when Mr. Harrel was living, would not lie.

As the wife's right of possession did not accrue until after the determination of the estate of her husband, it was not tolled until the conditions, prescribed as a bar to her recovery, had occurred after his death. Under the statute of 1839, acts of Illinois, 1838–39, 266, a person having such a continuous possession under color of title, as is here admitted, and paying all taxes upon the land, shall be held to be the legal owner of it to the extent and according to the tenor of his paper title; but that provision does not extend to a *feme covert*, if within three years after the termination of her disability she shall commence an action for the recovery of the land. Conceding to

the grantee of husband and wife the same period after the determination of the coverture for bringing suit as was accorded to her, it is evident, in view of these rulings, that the lapse of time would not in this case defeat a recovery.

Such was the acknowledged limitation before the passage of the act of the general assembly of Illinois, entitled, "An Act to protect married women in their separate property." Laws of 1861, 143. It provides "that all property, both real and personal, belonging to any married woman, as her sole and separate property, or which any woman hereafter married owns at. the time of her marriage, or which any married woman, during coverture, acquires in good faith from any person other than her husband, by descent, devise, or otherwise, together with all the rents, issues, increase, and profits thereof, shall, notwithstanding her marriage, be and remain during coverture her sole and separate property, under her sole control, and be held, owned, possessed, and enjoyed by her the same as though she was sole and unmarried; and shall not be subject to the disposal, control, or interference of her husband, and shall be exempt from execution or attachment for the debts of her husband."

These provisions were considered in *Emerson* v. *Clayton*, 32 Ill. 493. A married woman, in her own name and without joining her husband, brought replevin for certain chattels which she claimed as her own property. The defendant pleaded in abatement the coverture of the plaintiff at the time of the commencement of the suit. She replied that the chattels sued for were, during the coverture, acquired in good faith from persons other than her husband, with her own money and in her own right, and as such remained her separate property under her sole control, by virtue of the act of Feb. 21, 1861. The judgment below, sustaining a demurrer to the replication, was reversed, with instructions to overrule the demurrer and give the defendant leave to take issue, should he desire to do so. Mr. Justice Breese, in delivering the opinion of the Supreme Court, remarks, that a *feme covert* could not sue alone for her own property, or for the recovery of any of her rights at common law, as it vested her personal estate in her husband, and gave him absolute dominion over it; but that by the act she

must alone sue for an invasion of the rights which it conferred, and must " be considered a *feme sole* in regard to her estate of every sort owned by her before marriage, or which she may acquire during coverture in good faith from any person not her husband, by descent, devise, or otherwise, together with all the rents, issues, increase, and profits thereof."   " The right of ' sole control ' over the separate property of the wife by her necessarily confers the power to do whatever is necessary to the effectual assertion and maintenance of that right."

That case involved merely the ownership of personal chattels.   The act makes no distinction whatever as to the species of property, and it would seem to be a necessary inference, from the reasoning of the learned judge, that a married woman has a complete and absolute right to sue in her own name to recover her lands in the wrongful possession of another.

The decision is silent as to the property acquired prior to 1861 by a woman then married; but in *Rose* v. *Sanderson*, 38 id. 247, and *Cole* v. *Van Riper*, 44 id. 347, the statute was construed as not applying to an estate in the lands of the wife which was vested in the husband at the date of its passage. *Noble* v. *McFarland*, 51 id. 226, recognizes the same doctrine, and affirms that, in regard to such lands, the time within which the wife must commence her action after the removal of her disability does not begin to run until after the death of her husband.   The same court held, in *Beach* v. *Miller*, id. 206, that, where land was conveyed to the wife after the passage of the act, the husband's right to the curtesy was contingent, and that she could sue in her own name, when her rights thereto were affected; and in *Morrison et al.* v. *Norman et al.*, 47 id. 477, that the act did not so far remove the disabilities of coverture as to take married women out of the saving clause of the Statute of Limitations.

The effect of that act was recently considered by that court in a case presenting the following facts: Amos Haskins purchased a tract of land, on the twenty-seventh day of October, 1849, of one Hall, for $140, payable as follows: $50 in one year, $50 in two years, and $40 in three years, from the date of the purchase, for which he gave his promissory notes.   He received a bond from Hall, covenanting, on the payment of them, to convey the

property, and entered into possession of it. His son obtained $25 or $40 for one month of one Walrod, to whom he, in the name of said Amos, assigned the bond as security. This, with other money, was used to pay the first note, and the interest on the remaining ones. Amos Haskins died in November, 1850. Walrod, not having been paid the amount loaned, presented, as assignee, the bond to Hall, from whom, on the 19th of that month, on making the deferred payments, he received a deed, which he put on record the day of its date, entered upon the land, made improvements, and paid the taxes thereon.

A bill was filed against Walrod by the heirs-at-law of Amos Haskins, on the 20th of January, 1869, to obtain their rights in the premises. The court said that the bar to a recovery of the possession of the land by an action at law was complete twelve years before the commencement of the suit, and that a court of equity, following the analogies of the law, should refuse the relief sought.

At the time Walrod went into possession of the land, three of the complainants were under the disability of coverture, and continued to be so when the bill was filed. It was insisted that, as to them, the statute did not run, and that no laches could be imputed. The court declared, that, by the provisions of the act in question, the wife had the entire and sole control over her real and personal property, and that, should her lands be occupied adversely, she could bring ejectment, — use her own money to pay taxes, and thus prevent an occupant from holding possession and paying taxes, until possession and payment would ripen into a bar to a recovery. " It is true," says the court, " that the act of 1861 does not purport to repeal the saving clause in the Statute of Limitations; but it is manifest that a reasonable construction of the language used, in connection with the scope, purpose, and object of the statute, produces this result." " While the saving clause in the Statute of Limitations is not mentioned in the act of 1861, yet the powers conferred by the latter act so completely annihilate the existence of every reason which led to the passage of the former act, protecting a married woman from the running of the Statute of Limitations, that it would be absurd to hold that the two acts could stand together."

*Emerson* v. *Clayton* was cited and approved, and any expressions in *Noble* v. *McFarland* and other cases, which conflict with the opinion, were modified by the construction it gave to the act.

It is, therefore, clear that a woman who marries after the passage of the act in question is not within the saving clause of the Statute of Limitations, as against a party in the adverse possession of lands whereof she was seised at the time of her marriage, or which she subsequently acquires in the mode and manner mentioned in the act. As to the lands of which a woman, married at the date of the act, was previously seised, the limitation begins to run against her after the lapse of time barred the husband's right to recover them. The court uses this language : " When, therefore, the life-estate, which the husband had acquired by virtue of the marriage, was terminated by operation of the Statute of Limitations, and the act of 1861 removed the disability of coverture of the complainants, they were then bound to bring their action within seven years, or their right or title would be barred. This the complainants failed to do, but permitted the defendant to remain upon the land undisturbed for more than seven years after the passage of the act of 1861. By non-action on their part they have lost their rights. They are not protected by the saving clause of the statute."

*Castner et al.* v. *Walrod*, in which these views are announced, was decided by the Supreme Court of Illinois, Jan. 30, 1875. It was, on a petition for rehearing, reaffirmed in an elaborate opinion, filed Jan. 31, 1877.

Applying them to this case, it follows that the life-estate of Abram D. Harrel was, in December, 1864, extinguished by the operation of the statute. His wife's right of entry was then absolutely vested, and, notwithstanding her coverture, was completely barred in 1871. The plaintiff claiming under her is, therefore, not entitled to maintain this suit.

It may be proper to add, that the defendants put in evidence a paper writing, purporting to be a certified copy of a mortgage of the land in controversy by said William O'Hara and his wife, bearing date September, 1820, to John P. Cabanne; and the record of certain proceedings of the Circuit Court of

Pike County, within the then limits of which the land was situate, showing that the mortgagee filed his bill of foreclosure April 23, 1822, the first day of the term, against Susan O'Hara, the widow, and others, children and heirs of William M. O'Hara; an order of publication against defendants as non-residents; a decree of foreclosure; the appointment of a commissioner to make sale of the mortgaged premises; his report; the order confirming his doings in the premises; his acknowledgment of the deed to said John P. Cabanne, the purchaser, dated Feb. 20, 1823; and the approval by the court of said deed. The defendants proved that Cabanne died in 1842, leaving children and grandchildren, a part of whom conveyed by deed, dated April 1, 1861, five undivided sevenths of the demanded premises to one Nettleton, who conveyed by way of quitclaim to the defendants.

Various questions arising upon this evidence, — the jurisdiction of the Pike Circuit Court, the validity of its decree, and the charge of the court below upon these and other matters involved, — have been argued at great length, and with marked ability. We do not consider it necessary to express any opinion upon them. Error in regard to them, if any there be, would be of no avail to the plaintiff. The unreported case we have last cited establishes a rule of property in Illinois, which binds the courts of the United States, and presents an insuperable bar to his recovery.                *Judgment affirmed.*