# BAUSERMAN *v.* BLUNT.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF KANSAS.

No. 107. Argued January 6. 1893. — Decided March 6, 1893.

The construction given by the Supreme Court of a State to a statute of
limitations of the State will be followed by this court, even in a case
decided the other way in the Circuit Court before the decision of the
state court.

The statute of limitations of Kansas, as construed by the Supreme Court of
the State, does not run while the debtor is personally absent from the
State, although he retains a usual place of residence therein, where a
summons upon him might be served.

The statute of limitations of Kansas, as construed by the Supreme Court
of the State, stops running at the death of the debtor, but for su . .
reasonable time only as will enable the creditor to have an administrator
appointed.

THIS was an action brought February 13, 1886, in a court
of the State of Kansas, by Elbridge G. Blunt, a citizen of
Illinois, against Bauserman, a citizen of Kansas, and adminis-
trator of James G. Blunt, deceased, upon a promissory note
for $3204.34, made by James G. Blunt at Chicago, Illinois,
July 1, 1875, and payable to Elbridge G. Blunt in one day
after date, with interest annually at the rate of ten per cent.

The petition, after setting forth the making of the note at
the time and place aforesaid, alleged that James G. Blunt, at
the time of making the note, and for a long time before and
after, was a citizen and resident of Kansas, and died intestate
in July, 1881, leaving property in that State ; that no admin-
istrator of his estate was appointed until the defendant was
appointed administrator on December 14, 1885 ; that James
G. Blunt, after the making of the note and before his death,
was absent from and out of the State of Kansas, as well as
the State of Illinois, "for more than five years;" and that
no part of the note or of the interest thereon had been paid,
except $100 paid December 1, 1875, and indorsed on the note.

The defendant demurred to the petition, and assigned for cause of demurrer, "that said petition does not state facts sufficient to constitute a cause of action in favor of the plaintiff and against this defendant, and that it appears by the said petition that the alleged cause of action therein stated is barred by the statute of limitations."

On March 13, 1886, the case was removed by the defendant into the Circuit Court of the United States, in which, on June 10, 1886, as appeared by its record, the following proceedings were had: "Demurrer herein came on to be heard, and was argued by counsel; on consideration whereof the court doth overrule said demurrer; to which ruling and decision of the court said defendant duly excepts. It is ordered by the court that the defendant have sixty days from this date to file answer."

On June 23, 1886, the defendant filed an answer, setting up the statute of limitations; and alleging that the debtor, from the making of the note until his death, had his home and usual place of residence, where his family lived, and where process on him might have been served, in the city of Leavenworth and State of Kansas, and that his absence from the State was only temporary and with the intention of returning to that home and residence. The plaintiff filed a replication, denying all the allegations of the answer, except as admitted in the petition; and alleging that the debtor, after the maturity of the note and before his death, was out of the State of Kansas and personally absent therefrom for spaces of time aggregating the full period of five years; and that this action was commenced within one year after the appointment of an administrator of his estate. The parties afterwards in writing waived a trial by jury, and agreed that the action might be tried by the court.

The evidence at the trial tended to prove the following facts: The plaintiff and James G. Blunt were brothers. The note sued on was given at its date in Chicago, in settlement for work previously done by the plaintiff for the maker; and the maker a few days afterwards left Chicago and went to Washington in the District of Columbia, and between that

time and his death was absent from the State of Kansas more than five years, but during all this time, and for many years before, kept and maintained his usual place of residence and home in Kansas, open and occupied by his wife and children, and at which service of a summons might have been made on him. He died intestate July 25, 1881, and the defendant was duly appointed and qualified as his administrator by a probate court in Kansas on December 14, 1885.

The plaintiff relied upon the following sections of chapter 80 of the Compiled Laws of Kansas of 1879 and 1885:

" SEC. 18. Civil actions, other than for the recovery of real property, can only be brought within the following period after the cause of action shall have accrued, and not afterwards: First. Within five years: An action upon any agreement, contract or promise in writing."

" SEC. 21. If, when a cause of action accrues against a person, he be out of the State, or has absconded or concealed himself, the period limited for the commencement of the action shall not begin to run until he comes into the State, or while he is so absconded or concealed; and if, after the cause of action accrues, he depart from the State, or abscond or conceal himself, the time of his absence or concealment shall not be computed as any part of the period within which the action must be brought."

The defendant, to maintain the issues on his part, relied upon the following section of the same chapter:

" SEC. 64. The service shall be by delivering a copy of the summons to the defendant personally, or by leaving one at his usual place of residence, at any time before the return day."

Also upon the following section of chapter 37 of those laws:

" SEC. 12. Administration of the estate of an intestate shall be granted to some one or more of the persons hereinafter mentioned, and they shall be respectively entitled thereto in the following order, to wit:

"First. His widow, or next of kin, or both, as the court may think proper; and if they do not voluntarily either take or renounce the administration within thirty days after the

death of the intestate, they shall, if resident within the county, upon application of any one interested, be cited by the court or judge for that purpose.

"Second. If the persons so entitled to administration are incompetent, or evidently unsuitable for the discharge of the trust, or if they neglect for twenty days after service of said citation, without any sufficient cause, to take administration of the estate, the court shall commit it to one or more of the principal creditors, if there be any competent and willing to undertake the trust.

"Third. If there be no such creditors, and the court is satisfied that the estate exceeds the value of one hundred dollars, the court shall commit administration to such other persons as it shall deem proper."

Thereupon the court, on November 26, 1888, "being of opinion that the personal absence of the debtor from the State of Kansas, notwithstanding his residence in the State, where service of a summons could be made on him, was sufficient to prevent the bar of the statute of limitations, and that the statute of limitations was suspended from the debtor's death until the appointment of his administrator," found and adjudged that the plaintiff recover of the defendant the sum of $7396.02, with interest at the yearly rate of ten per cent from that date; and allowed a bill of exceptions to that opinion and finding.

The defendant sued out this writ of error, and assigned as errors: First. That the petition and the matters therein contained were insufficient for the plaintiff to maintain his action. Second. That by the record it appeared that the findings and judgment were given for the plaintiff, whereas by law they ought to have been given for the defendant.

*Mr. Frank Hagermann* and *Mr. J. H. Gillpatrick* for plaintiff in error.

*Mr. Samuel Shellabarger,* (with whom were *Mr. Jeremiah M. Wilson* and *Mr. John L. Pendery* on the brief,) for defendant in error.

Mr. Justice Gray, after stating the case, delivered the opinion of the court.

This is an action on a promissory note. The defence is the statute of limitations. The note was payable July 2, 1875. The debtor died in July, 1881. An administrator of his estate was appointed and qualified December 14, 1885. The action was brought February 13, 1886.

By the statute of limitations of Kansas, an action upon any agreement, contract or promise in writing must be brought within five years after the cause of action accrues; but it is provided that "if when a cause of action accrues against a person, he be out of the State," "the period limited for the commencement of the action shall not begin to run until he comes into the State;" "and if, after the cause of action accrues, he depart from the State," "the time of his absence" "shall not be computed as any part of the period within which the action must be brought." Compiled Laws of Kansas, c. 80, §§ 18, 21.

The statutes of Kansas also provide that a summons in a civil action may be served either upon the defendant personally, or by leaving a copy at his usual place of residence; and further provide that administration of the estate of an intestate may be granted as follows: first, to his widow or next of kin; second, if they do not apply, or are unsuitable, to one or more of his creditors; and third, if there are no creditors competent and willing to undertake it, to such other persons as the court shall deem proper. Compiled Laws of Kansas, c. 37, § 12; c. 80, § 64.

The two principal questions presented by the record and argued by counsel are : 1st. Whether the statute of limitations began and continued to run during the personal absence of the debtor from the State, retaining a usual place of residence therein, where a summons upon him might be served? 2d. Whether the running of the statute was suspended, after the death of the debtor, until the appointment of an administrator of his estate, more than four years and four months afterwards, although the plaintiff, as a creditor of the deceased,

could, at the end of fifty days from his death, have applied to have an administrator appointed?

Both these questions appear by the bill of exceptions to have been treated as arising upon the evidence at the trial, and to have been ruled upon in entering final judgment. The first one certainly was; and if the second was not unequivocally raised at that stage of the case, it was clearly presented by the demurrer to the petition, inasmuch as, by the practice in Kansas, the defence of the statute of limitations, when all the requisite facts appear on the face of the petition, may be taken advantage of by demurrer. *Zane* v. *Zane*, 5 Kansas, 134; *Bartlett* v. *Bullene*, 23 Kansas, 606, 613; *Chemung Canal Bank* v. *Lowery*, 93 U. S. 72. The defendant having answered over by leave and order of the court, reserving his objection to the overruling of the demurrer, the question whether the demurrer was rightly overruled is open on this writ of error sued out after final judgment. *Teal* v. *Walker*, 111 U. S. 242; *Southern Pacific Co.* v. *Denton*, 146 U. S. 202.

Both questions depend upon the local law of Kansas. By a provision inserted in the first Judiciary Act of the United States, and continued in force ever since, Congress has enacted that "the laws of the several States, except where the Constitution, treaties or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply." Act of September 24, 1789, c. 20, § 34, 1 Stat. 92; Rev. Stat. § 721. No laws of the several States have been more steadfastly or more often recognized by this court, from the beginning, as rules of decision in the courts of the United States, than statutes of limitations of actions, real and personal, as enacted by the legislature of a State, and as construed by its highest court. *Higginson* v. *Mein*, 4 Cranch, 415, 419, 420; *Shelby* v. *Guy*, 11 Wheat. 361, 367; *Bell* v. *Morrison*, 1 Pet. 351, 360; *Henderson* v. *Griffin*, 5 Pet. 151; *Green* v. *Neal*, 6 Pet. 291, 297–300; *McElmoyle* v. *Cohen*, 13 Pet. 312, 327; *Harpending* v. *Dutch Church*, 16 Pet. 455, 493; *Leffingwell* v. *Warren*, 2 Black, 599; *Sohn* v. *Waterson*, 17 Wall. 596, 600; *Tioga Railroad* v. *Blossburg & Corning*

*Railroad*, 20 Wall. 137; *Kibbe* v. *Ditto*, 93 U. S. 674; *Davie* v. *Briggs*, 97 U. S. 628, 637; *Amy* v. *Dubuque*, 98 U. S. 470; *Mills* v. *Scott*, 99 U. S. 25, 28; *Moores* v. *National Bank*, 104 U. S. 625; *Michigan Insurance Bank* v. *Eldred*, 130 U. S. 693, 696; *Penfield* v. *Chesapeake &c. Railroad*, 134 U. S. 351; *Barney* v. *Oelrichs*, 138 U. S. 529.

In *Patten* v. *Easton*, 1 Wheat. 476, 482, and again in *Powell* v. *Harman*, 2 Pet. 241, this court had construed a Tennessee statute of limitations of real actions in accordance with decisions of the Supreme Court of the State, made since the first of those cases was certified up to this court, and supposed to have settled the construction of the statute. Yet in *Green* v. *Neal*, 6 Pet. 291, a judgment of the Circuit Court of the United States, which had held itself bound by those cases in this court, was reversed, because of more recent decisions of the state court, establishing the opposite construction.

In *Pease* v. *Peck*, 18 How. 595, it was because the statute of limitations of Michigan, as published by authority of the legislature and acted on by the people for thirty years, contained an exemption of "beyond seas," that this court declined to treat those words as not part of the act, although it was shown that they were not in the original manuscript preserved in the public archives, and that they had therefore been recently adjudged by the Supreme Court of the State to be no part of the act. The question there was not of the construction of the text of the statute, but what the true text was; and we are not now required to consider whether that decision can be reconciled with later cases, in which this court has held that an act of the legislature of a State, which has been held by its highest court not to be a statute of the State, because not duly enacted, cannot be held by the courts of the United States, upon the same evidence, to be a law of the State. *South Ottawa* v. *Perkins*, 94 U. S. 260; *Post* v. *Supervisors*, 105 U. S. 667. See also *Norton* v. *Shelby County*, 118 U. S. 425, 440.

In *Leffingwell* v. *Warren*, 2 Black, 599, 603, Mr. Justice Swayne, speaking for the court, laid down, and supported by references to earlier decisions, the following propositions:

"The courts of the United States, in the absence of legislation upon the subject by Congress, recognize the statutes of limitations of the several States, and give them the same construction and effect which are given by the local tribunals. They are a rule of decision under the 34th section of the Judicial Act of 1789. The construction given to a statute of a State by the highest judicial tribunal of such State is regarded as a part of the statute, and is as binding upon the courts of the United States as the text. If the highest judicial tribunal of a State adopt new views as to the proper construction of such a statute, and reverse its former decisions, this court will follow the latest settled adjudications."

In *Levy* v. *Stewart,* 11 Wall. 244, which arose in Louisiana, the question was not of the construction of the terms of a statute of limitations, but of an implied exception, by reason of the effect of the state of war existing during the rebellion, while the courts of the States held by the rebels were closed to the citizens of the rest of the Union; and this court declined to be bound by decisions of the courts of Louisiana restricting such effect, because they were inconsistent with its own earlier decisions in *Hanger* v. *Abbott,* 6 Wall. 532, and *The Protector,* 9 Wall. 687, which had dealt with that question as one of public and international law, upon which this court is never obliged to accept the opinion of the state courts. *Huntington* v. *Attrill,* 146 U. S. 657, 683.

In *Tioga Railroad* v. *Blossburg & Corning Railroad,* 20 Wall. 137, 143, this court, following the decisions of the Court of Appeals of New York, held that a foreign corporation could not avail itself of the statute of limitations of that State; and Mr. Justice Bradley, in delivering judgment, said: "These decisions upon the construction of the statute are binding upon us, whatever we may think of their soundness on general principles."

In *Amy* v. *Dubuque,* 98 U. S. 470, 471, Mr. Justice Harlan, summing up the result of the previous decisions in the very words of some of them, said that "it is not to be questioned that laws limiting the time of bringing suit constitute a part of the *lex fori* of every country; they are laws for administer-

ing justice, one of the most sacred and important of sovereign rights ; " and that it is as little to be questioned that " the courts of the United States, in the absence of legislation upon the subject by Congress, recognize the statutes of limitations of the several States, and give them the same construction and effect which are given by the local tribunals."

Upon the question how far a saving clause as to married women in a statute of limitations is affected by a subsequent statute of the State enlarging the rights of married women, this court, in two comparatively recent cases, has come to differing conclusions by following in each case a single decision made by the highest court of the State since the case was brought to this court from the Circuit Court of the United States. *Kibbe* v. *Ditto*, 93 U. S. 674 ; *Moores* v. *National Bank*, 104 U. S. 625.

In *Kibbe* v. *Ditto*, which arose in Illinois, the course of decision in the highest court of the State was shown to be as follows : In *Emerson* v. *Clayton*, 32 Illinois, 493, in which the statute of limitations was not in question, the decision was that a married woman might maintain replevin for her chattels, without joining her husband, because, as the court said, the subsequent statute which gave her the right of sole control over her separate property "necessarily confers the power to do whatever is necessary to the effectual assertion and maintenance of that right." But in *Rose* v. *Sanderson*, 38 Illinois, 247, and in *Cole* v. *Van Riper*, 44 Illinois, 58, it was decided that the married woman's act did not affect an estate by the curtesy vested in a husband at the time of its passage ; and it was directly adjudged in *Morrison* v. *Norman*, 47 Illinois, 477, and again distinctly asserted in *Noble* v. *McFarland*, 51 Illinois, 226, that as to real estate in which the husband had a tenancy by the curtesy, the statute of limitations did not run against the wife until after his death. Such was the state of the law in Illinois when the Circuit Court of the United States in *Kibbe* v. *Ditto* held that the statute of limitations ran against the wife in the husband's lifetime ; and its judgment was affirmed by this court solely because of a subsequent decision of the Supreme Court of Illinois in *Castner* v. *Walrod*, (since

reported in 83 Illinois, 171,) reviewing and modifying or over-
ruling the earlier cases in that State, and which, this court
said, "establishes a rule of property in Illinois, which binds
the courts of the United States and presents an insuperable
bar." 93 U. S. 680.

In *Moores* v. *National Bank*, which arose in Ohio, a judg-
ment of the Circuit Court of the United States holding, in
accordance with a previous decision of the Superior Court of
Cincinnati, that the saving clause in favor of married women
in the statute of limitations of Ohio was repealed by a subse-
quent statute authorizing a married woman to sue alone in
actions concerning her separate property, was reversed by
this court, without any discussion of the merits of the ques-
tion, because a subsequent decision of the Supreme Court of
the State, holding that the statute of limitations did not, at the
least, begin to run against a married woman until after the
passage of the later statute, should be followed by this court.
104 U. S. 629.

What, then, are the decisions of the Supreme Court of
Kansas upon the two questions presented by this record?

Upon the question relating to the debtor's personal absence
from the State in his lifetime, it is to be observed that the
saving clause of the statute speaks only of where the debtor
is, and does not (like the statute of New York which governed
*Penfield* v. *Chesapeake &c. Railroad*, 134 U. S. 351, and
*Barney* v. *Oelrichs*, 138 U. S. 529,) use the word "reside" or
"residence." The words of the Kansas statute are "if he be
out of the State," "until he comes into the State," "if he
depart from the State," and "the time of his absence." When
this case was before the Circuit Court, it was clearly settled
by a uniform series of decisions of the Supreme Court of Kan-
sas, extending over a period of twenty years, that the words
of the statute were to have their natural meaning, and that
personal absence of the debtor, even if he retained a residence
within the State at which process against him might be served,
was sufficient to take the case out of the statute. *Lane* v.
*National Bank*, 6 Kansas, 74; *Hoggett* v. *Emerson*, 8 Kansas,
181; *Morrell* v. *Ingle*, 23 Kansas, 32; *Conlon* v. *Lanphear*,

37 Kansas, 431. The later decisions of that court recognize the same rule. *Chicago &c. Railway* v. *Cook*, 43 Kansas, 83; *Bauserman* v. *Charlott*, 46 Kansas, 480, 482.

The Supreme Court of the adjoining State of Nebraska, indeed, as the plaintiff in error has pointed out, has held a precisely similar provision of its own statute of limitations not to include the case of a debtor temporarily absent from the State, and having a usual place of residence therein at which a summons to him might be served. Nebraska Code of Civil Procedure, § 20; *Blodgett* v. *Utley*, 4 Nebraska, 25; *Forbes* v. *Thomas*, 22 Nebraska, 541. But what may be the law of Nebraska is immaterial. The case at bar is governed by the law of Kansas, and the duty of this court to follow as a rule of decision the settled construction by the highest court of Kansas of a statute of that State is not affected by the adoption of a different construction of a similar statute in Nebraska or in any other State. *Shelby* v. *Guy*, 11 Wheat. 361, 367; *Christy* v. *Pridgeon*, 4 Wall. 196, 203; *Union Bank* v. *Kansas Bank*, 136 U. S. 223, 235.

It was therefore rightly held by the Circuit Court that the statute of limitations did not run while the debtor was personally absent from the State, notwithstanding that he continued to have a usual place of residence in the State, where service of a summons could be made on him.

The question whether the statute of limitations ceased to run from the death of the debtor until the appointment of his administrator, four years and more than four months afterwards, requires more consideration.

In the absence of express statute or controlling adjudication to the contrary, two general rules are well settled. 1st. When the statute of limitations has once begun to run, its operation is not suspended by a subsequent disability to sue. *Walden* v. *Gratz*, 1 Wheat. 292; *Mercer* v. *Selden*, 1 How. 37; *Harris* v. *McGovern*, 99 U. S. 161; *McDonald* v. *Hovey*, 110 U. S. 619. 2d. The bar of the statute cannot be postponed by the failure of the creditor to avail himself of any means within his power to prosecute or to preserve his claim. *Richards* v. *Maryland Ins. Co.*, 8 Cranch, 84; *Braun* v. *Sauerwein*, 10

Wall. 218; *United States* v. *Wiley*, 11 Wall. 508, 513, 514; *Kirby* v. *Lake Shore & Michigan Southern Railroad*, 120 U. S. 130, 140; *Amy* v. *Watertown*, 130 U. S. 320, 325.

But the Supreme Court of Kansas has always held that the death of the debtor suspends the operation of the statute of limitations. *Toby* v. *Allen*, 3 Kansas, 399; *Hanson* v. *Towle*, 19 Kansas, 273; *Nelson* v. *Herkel*, 30 Kansas, 456. In each of those cases it was said that the operation of the statute was suspended until an administrator had been appointed; and they were evidently the foundation of the ruling of the Circuit Court in this case that the statute of limitations was suspended from the debtor's death until the appointment of his administrator.

But those cases, when examined, do not disclose any intention to decide or to intimate that the operation of the statute of limitations would be suspended during a longer time, between the death of the debtor and the appointment of an administrator, than would be sufficient to enable the creditor to have an administrator appointed. In *Toby* v. *Allen*, and in *Hanson* v. *Towle*, there is nothing to show that an administrator was not appointed as soon as possible after the debtor's death. And in *Nelson* v. *Herkel*, although it appears in the statement of the case that four years and nearly nine months had elapsed between the debtor's death and the administrator's appointment, that fact does not appear to have been urged by counsel, or regarded by the court, which treated the case as governed by its previous decisions.

The cases of *Green* v. *Goble*, 7 Kansas, 297; *Carney* v. *Havens*, 23 Kansas, 82; and *Mills* v. *Mills*, 43 Kansas, 699, cited at the argument of the present case, related to the death of the creditor, not of the debtor, and have no important bearing on this case.

Since the judgment of the Circuit Court in the case at bar, the Supreme Court of Kansas, upon careful and elaborate examination of the question, has held that an action by another creditor against this defendant was barred by the statute, because the plaintiff had unreasonably delayed to apply for the appointment of an administrator. Chief Justice

Horton, (who had delivered the opinion in *Nelson* v. *Herkel*,) after referring to the cases, mentioned above, as holding that the "death of the debtor operates to suspend the statute," added : "But this court has never said, when the question was properly presented, that the creditor can indefinitely prolong the time of limitation by his own omission or refusal to act, or that the death of the debtor operates to suspend the statute of limitations indefinitely." He then referred to a number of authorities, and among others to the statement of Mr. Justice Bradley, speaking for this court, in *Amy* v. *Watertown*, above cited, that "when a party knows that he has a cause of action, it is his own fault if he does not avail himself of those means which the law provides for prosecuting his claim or instituting such proceedings as the law regards sufficient to preserve it;" and to the decisions in *Atchinson &c. Railroad* v. *Burlingame Township*, 36 Kansas, 628, 633, and in *Rork* v. *Douglass County*, 46 Kansas, 175, 181, as establishing that "a person cannot prevent the operation of the statute of limitations by delay in taking action incumbent upon him" and that "to permit a long and indefinite postponement would tend to defeat the purpose of the statutes of limitation, which are statutes of repose, founded on sound policy, and which should be so construed as to advance the policy they were designed to promote." "Following these decisions," the Chief Justice concluded that the plaintiff's claim was barred by the statute ; and said : "The reasonable time within which a creditor, having a claim against a decedent, and wishing to establish the same against his estate, should make application for administration would be, under the statute, fifty days after the decease of the intestate, or at least within a reasonable time after the expiration of fifty days. But a creditor cannot, as in this case, postpone the appointment for months and years, and then recover upon his claim. If he can do so for several months or several years, he can do so for any indefinite length of time, and then resort to administration and establish his claim. This is not in accord with the policy of the statutes, nor with our prior decisions." *Bauserman* v. *Charlott*, 46 Kansas, 480, 483–486.

That decision was evidently deliberately considered and carefully stated, with the purpose of finally putting at rest a question on which some doubt had existed; it is supported by satisfactory reasons, and is in accord with well settled principles; and there is no previous adjudication of that Court to the contrary. In every point of view, therefore, it should be accepted by this Court as conclusively settling that the operation of the statute of limitations of Kansas is suspended after the death of the debtor for the fifty days only, during which the creditor could not apply for the appointment of an administrator, or, at most, for a reasonable time after the expiration of the fifty days.

It remains only to apply the rule thus established to the facts of this case, as alleged in the petition and admitted by the demurrer. Taking the statement of those facts as strongly as possible in favor of the plaintiff, the time which elapsed from the maturity of the note on July 2, 1875, to the commencement of this action on February 13, 1886, was ten years, seven months and eleven days; the allegation that the debtor before his death was absent from the State "for more than five years" cannot be treated as definitely describing a longer period than five years and one day; and after deducting that period there remain five years, seven months and ten days; from which, if we deduct the five years' period of limitation, as well as the fifty days next after the debtor's death, during which the creditor could not have applied for administration, there still remain five months and twenty days.

.It is argued for the plaintiff that this was not more than a reasonable time within which he might have applied for the appointment of an administrator after the expiration of the fifty days from the death. To this there are two answers: First, the plaintiff did not so apply within that time, nor was any administrator appointed until almost four years afterwards; and it is hard to see how any reasonable time to enable the plaintiff to have an administrator appointed can be computed in his favor when he has taken no steps whatever to that end. Second, if a reasonable time for that purpose, although the plaintiff did not avail himself of it, can be com-

puted in his favor, and the case be treated as if the time during which he might have applied, but did not apply, for the appointment of an administrator, was five months and twenty days only, yet his delay for that time, being more than thrice the period of fifty days next after the debtor's death which was allowed for the next of kin to obtain administration, was, upon the facts appearing by this record, and without any suggestion that the plaintiff was ignorant of his brother's death, clearly unreasonable, and could not prevent or postpone the running of the statute of limitations.

The defendant below, the plaintiff in error here, is therefore entitled to judgment upon his demurrer to the petition, unless the Circuit Court shall see fit to allow an amendment of the plaintiff's allegations, so as to aver more definitely the length of time during which the debtor was absent from the State after the maturity of the note and before his death.

*Judgment reversed, and case remanded to the Circuit Court for further proceedings in conformity with this opinion.*