LAUGHARN v. BANK OF AMERICA
NAT. TRUST & SAVINGS ASS'N.*
No. 8295.

Circuit Court of Appeals, Ninth Circuit.
Feb. 23, 1937.

Rehearing Denied March 15, 1937.

Raphael Dechter and Joseph J. Rifkind, both of Los Angeles, Cal., for appellant.

Louis Ferrari, of San Francisco, Cal., and Edmund Nelson and Hugo A. Steinmeyer, both of Los Angeles, Cal., for appellee.

Before GARRECHT and HANEY, Circuit Judges, and NETERER, District Judge.

HANEY, Circuit Judge.

Appellant as trustee in bankruptcy asks review of an order of the bankruptcy court allowing claims filed by appellee, as secured claims.

Bankrupt Jack Dave Sterling bought lots 2 and 4, block 319, Huntington Beach Seventeenth Street section together, and caused title to be taken in the name of one Kearns, as trustee. Kearns thereafter leased lot 2 to Huntington Shore Oil Company, a corporation, hereinafter referred to as Huntington, reserving a landown-

*Writ of certiorari denied 67 S.Ct. 929, 81 L.Ed. ——

552

er's royalty therein, which was thereafter sold to third persons. Kearns also leased lot 4 to Tide Petroleum Company, a corporation, hereinafter referred to as Tide, reserving a landowner's royalty therein, which was thereafter sold.

Thereafter, Kearns transferred whatever interest he had in lot 2 to Huntington, and transferred whatever interest he had in lot 4 to Tide.

Lion Petroleum Corporation, hereinafter referred to as Lion, was lessee in an oil and gas lease covering other property.

Appellee is a national banking association, and on September 21, 1935, made a loan of $5,000 to Huntington which was evidenced by a promissory note. At the same time appellee made a loan of $5,000 to Lion, which was likewise evidenced by a promissory note. Both notes were endorsed by Sterling. At the same time a written guaranty was executed by Sterling and Lion for existing and future indebtedness of Huntington, not exceeding $30,000. There was also executed at that time by Sterling and Huntington a written guaranty for existing and future indebtedness of Lion, not exceeding $20,000.

On the same date Huntington executed and delivered to appellee, as security for the loans made to itself and to Lion, and as security for future loans which might be made to itself, Lion and to Tide, an assignment, which provided that Huntington "does hereby assign, transfer and convey * * * all its right, title and interest in and to all crude oil, gas and other hydrocarbon substances produced from that certain oil well known as Huntington Shore Oil Company Well No. 1, situated upon [lot 2 above mentioned] * * *

"This assignment hereby authorizes any company or individual that may now, or hereafter purchase any oil, gas and other hydrocarbon substance produced and saved from said Oil Well and/or said real property herein described to pay the proceeds thereof to said [appellee] *' * *"

On the same date Lion executed and delivered to appellee, as security (for which loans it does not appear), an assignment, containing the exact language quoted above, except the description of the real property. The real property described was that which Lion held as lessee.

On October 1, 1935, appellee made a loan of $5,000 to Tide, which was evidenced by a promissory note. The note was endorsed by Sterling, and guaranteed by the written guaranty of Lion, Huntington, and Sterling in an amount not exceeding $20,000. Tide also executed and delivered an assignment as security. The loan or loans it secured do not appear from the record before us. The assignment contains the identical language quoted from the Huntington assignment except that the well is described as "Tide Petroleum Corporation Well No. 1" and the real property upon which it was situated is lot 4 mentioned above.

On October 8, 1935, appellee made a loan of $20,300 to Huntington, and received as additional security fourteen sight drafts payable to appellee upon S. S. Shears Corporation.

The assignments made by Huntington, Lion, and Tide were all made without the consent of, the Commissioner of Corporations of California. All of the assignments were filed for record on October 16, 1935, and recorded in the proper county.

At the times when the above loans were made, Huntington, Lion, and Tide were the alter ego of bankrupt Sterling. Subsequently, Sterling and the three corporations were adjudicated bankrupt.

Appellee filed a petition in each of the Huntington, Lion, and Tide cases praying that appellant pay a specified percentage of all of the proceeds received by him, and which he might thereafter receive, from the sale of oil and gas produced from the respective wells, until appellee's claims were paid in full.

Payments had been made on some of the indebtedness, and there was interest due on all loans. The petitions filed show that at the time of the adjudications in bankruptcy, the total amount for which both Huntington and Lion were liable, was $27,977.96, and the total amount for which Tide is liable, was $5,043.56.

All of the bankruptcy cases were consolidated. The referee found that the three assignments were "securities" within the meaning of the Corporate Securities Act of California, and were void because of the failure to procure the consent of the Corporation Commissioner prior to the issuance of the securities. An order was entered pursuant to the finding. Appellee thereupon filed a petition for review in the bankruptcy court, which court reversed the order of the referee, and ordered appellee's claim allowed as a preferred claim.

Appellant contends: (1) That it is impossible to assign title to oil and gas

which is to come into being and existence sometime in the future, and that the assignments should be treated as executory contracts which may be repudiated by the trustee; (2) that if the assignments were not executory contracts, they were "securities" within the meaning of the corporate securities act and void, because issued without a permit.

Appellee contends: (1) That the assignments conveyed an interest in real property; (2) that the assignments are not securities within the meaning of the corporate securities act; (3) that if the assignments are securities, they are nevertheless enforceable against the trustee in bankruptcy, because the trustee takes only the title of the bankrupt, and securities void because issued in violation of the securities act are enforceable against the issuer.

In Acme Oil & Mining Co. v. Williams, 140 Cal. 681, 684, 74 P. 296, and in People v. Associated Oil Co., 211 Cal. 93, 101, 294 P. 717, the oil in place doctrine was rejected. In the latter case (211 Cal. 93, at page 102, 294 p. 717, 722) it is said: "The generally accepted view, therefore, is that the property right of the owner or lessee of land in and to the gas and oil beneath the surface is not an absolute one. Such substances, because of their peculiarity in the natural state, partake more of the nature of common property, title to which becomes absolute when they are captured and reduced to possession."

As the law then stood, this court was presented with two cases involving the nature of royalty interest holder's right whose interest was acquired from a lessee in an oil and gas lease. It was held that neither the owner nor the lessee had any present title to oil in place, and therefore the assignment by the lessee did not convey the present title. In re Lathrap (C.C.A.9) 61 F.(2d) 37; Bank of American Nat. Trust & Savings Ass'n v. Fisher (C.C.A.9) 61 F.(2d) 53.

Thereafter, the Supreme Court of California, in Callahan v. Martin, 3 Cal.(2d) 110, 43 P.(2d) 788, 792, 101 A.L.R. 871, considered the same issue and held that after an oil and gas lease, both the lessor and the lessee had an interest in real property capable of assignment or conveyance. See, also, Standard Oil Co. v. John P. Mills Organization, 3 Cal.(2d) 128, 43 P. (2d) 797; Dabney-Johnston Oil Corporation v. Walden, 4 Cal.(2d) 637, 52 P.(2d) 237; Dabney v. Edwards, 5 Cal.(2d) 1, 53 P.(2d) 962, 103 A.L.R. 822.

The determination of the interest created by an oil and gas lease is the determination of rules of property. Guffey v. Smith, 237 U.S. 101, 113, 35 S.Ct. 526, 59 L.Ed. 856. It is our duty to follow the law of the state established by legislative enactment, or decision of the highest court of the state, with respect to property rules. In Edward Hines Yellow Pine Trustees v. Martin, 268 U.S. 458, 463, 45 S.Ct. 543, 545, 69 L.Ed. 1050, it is said: "But where the rule is one affecting title to real estate within the state and has been repeatedly determined by decisions of state courts so that it is established as the law of the state, there has been no departure from the rule that the federal courts will follow the decisions of the state courts. [Citations.] And this is the rule even though the state rule is not approved. [Citations.] To avoid the uncertainty and injustice which result from 'the discordant elements of a substantial right which is protected in one set of courts and denied in the other, with no superior to decide which is right' (Brine v. Insurance Company, 96 U.S. 627 [628], 24 L.Ed. 858) this court has not hesitated, when there has been a conflict of decision between it and the state courts affecting a rule of property within the state, to overrule its own decisions and to follow the state decisions once it has become evident that they have established a 'rule of property' as the settled law of the state. [Citations.] And see Bauserman v. Blunt, supra [147. U.S. 647, 13 S.Ct. 466, 37 L.Ed. 316], overruling a decision of the Circuit Court antedating a conflicting decision of the state court."

If previous decisions of this court, in the absence of state court decisions, established a rule of property, which was later changed by state statute, can it be argued that this court must follow its previous decisions? If the law of the state is established either by statute or judicial decisions, this court must follow the law of property as determined by the highest state court. Therefore, we must and do overrule the prior decisions of this court in so far as they are inconsistent with the settled law of California as adjudged by the California courts. On this basis we hold the assignments in the instant case to be conveyances of an interest in real property, and not to be executory contracts.

554

As stated, appellant contends that the assignments are "securities" within the meaning of section 2(a), subdivision 7, of the Corporate Securities Act, St.1935, p. 829. The position of appellee is shown by the following quotation from its brief: "At the outset we concede that under the decision of this court in De Mille Productions v. Woolery, 61 F.(2d) 45, and a long line of decisions of the Supreme Court of the State of California, including the very recent case of Domestic & Foreign Petroleum Co. v. Long, 4 Cal.(2d) 547, 51 P. (2d) 73, a *royalty interest* in an oil and gas lease or well is a security within the meaning of the statute. But the assignments here in question are not royalty interests, but on the contrary constitute a conveyance of the *entire interest* of the assignor in the property conveyed and do not come within the meaning or intent of the Corporate Securities Act or the rule laid down by these cases."

We will not discuss the distinction claimed by appellee, but assume that the assignments are securities within the meaning of the act, because we are of the opinion that even though the assignments are void, they are enforceable by appellee against appellant.

In Cecil B. De Mille Productions v. Woolery (C.C.A.9) 61 F.(2d) 45, this court held that such "securities," issued without the consent of the corporation commissioner, were void, and could not be enforced by the person to whom they were issued against the receiver of the issuer. Since that case was decided, however, the California courts have established the rule to the contrary, Domestic & Foreign Petroleum Co. v. Long, 4 Cal.(2d) 547, 51 P.(2d) 73, and cases cited. The theory is that to fail to uphold such a rule would permit the issuer to take advantage of his own wrong, and would defeat the purpose of the act, which is to protect investors. On the principle above established, we must hold that in so far as Cecil B. De Mille Productions v. Woolery, supra, is in conflict with Domestic & Foreign Petroleum Co. v. Long, supra, the applicable and controlling doctrine is announced in the latter case.

If appellant stood in the shoes of the issuers, the case would be disposed of. Appellant has broader rights than the issuers, under 11 U.S.C.A. § 75 (a). However, we have held that the assignments were conveyances of an interest in real property. Under Civil Code of California, §§ 2920 and 2925, they were mortgages which were valid against appellant under 11 U.S.C.A. § 107.

Affirmed.