**GARDNER, Estate of, In re.**

Common Pleas Court, Meigs County.

No. 18096. Decided July 6, 1959.

## OPINION

By BACON, J.

Exceptions to inventory filed in the estate of Frank Gardner, deceased, certified to the common pleas court under the provisions of §2101.38 R. C. Stipulated by counsel that the court rule upon exceptions numbers 7 and 9, namely, whether or not the widow, Barbara Gardner, is now entitled to widow's year's allowance and property exempt from administration.

Frank Gardner died intestate November 10, 1950, leaving his widow, Barbara Gardner, and five children his next of kin and heirs at law. No administration was applied for until his widow made ex parte application March 18, 1959. She was appointed and letters issued the same day. An inventory was returned March 26, 1959, which included personal property at $403.00 (consisting of horse-drawn farm machinery, a steer, a cow and an old gray mare), cash in sum of $700 00, and an undivided one-half interest in 2 parcels of real estate appraised at $1,000.00 and $2,000.00 respectively. From this total of $4,103.00 the appraisers set the sum of $820.60 as exempt from administration, and in this schedule recited that the widow selected the steer and a hay rope to the value of $120.00, leaving money required for property exempt in the sum of $700.60. The appraisers further fixed the sum of $1,500.00 as money necessary for the support of the widow for one year.

Exceptions were filed to this inventory. (1) That decedent had $900.00 cash at the time of his death. (2) That 5 head of cattle were omitted. (3) That a brood sow was omitted. (4) That grain and hay was omitted. (5) That the widow had disposed of the personal property as set forth so that the appraisers did not appraise same on actual view. (6) That the value fixed for the real estate was inadequate. (7) That the widow is not now entitled to a year's allowance. (8) The amount fixed by the appraisers is excessive. (9) That the widow is not now entitled to property exempt from administration.

Settlement of the questions raised by Exceptions Nos. 7 and 9 is the key resolving the controversy between the parties. If by more than eight years delay Barbara Gardner has lost the benefits §§10509-54, 10509-74, 10509-75 GC, bestowed upon widows, pursuance of administration with another appraisal and attendant procedure might not be warranted. There are no other debts or claims against the estate requiring administration. There was a funeral bill paid by the widow January 20, 1951. There is authority that the statute of limitations does not run against a·funeral bill during the interval between the death of the deceased and the appointment of an administrator. Estate of Miller, deceased, 12 Ohio Decisions 562, a common pleas opinion on the tenuous theory that there being no one in existence against whom an action could be brought the statute of limitations should not run. In order now to assert any claim on the funeral bill the equitable principle of subrogation must be invoked, which would be denied upon two equitable maxims—"Equity will not aid a volunteer" and "Equity aids the vigilant and not those who slumber upon their rights."

Examination of the authorities upon the question discloses most of

the cases involve the widow's year's allowance. The authorities have explained the nature of the rights which it is claimed the widow has lost by more than eight years' delay.

Judge Ranney, referring to the widow's year's allowance, in the case of **Collier v. Collier's Executors, 3 Oh St 369,** said:

"The allowance is designed for the support of herself and children during the year that the executor may retain all the assets of the estate, awaiting the presentation of debts against it, and while she has no power to compel him to pay over any legacy to her, however ample it may be." **In the estate of Metzger, 140 Oh St 50, 23 O. O. 257, 42 N. E. 2d 443,** Judge Zimmerman said:

"The purpose of the year's allowance is to feed, clothe, and otherwise support a widow or a widow and minor children, if any there be, for the stated period of twelve months following the death of the husband and father, and the allowances under §10509-54 GC, are by way of additional benefits and compensation to the widow or minor children. Under their wording, both §§10509-74 and 10509-54 GC, would appear primarily to contemplate the usual situation where a widow and minor children live for a considerable time following the death of the decedent, and the allowances made are essentially for their use, comfort and enjoyment."

Judge Middleton, in his able dissent concurred in by Judge Zimmerman, in **Estate of Croke, 155 Oh St 434, 44 O. O. 411, 99 N. E. 2d 483,** at **page 452 of 155 Oh St** said:

"It is manifest that these two sections (§§10509-74 and 10509-75 GC), were intended to provide the widow, and children, if any, with the necessities of life for twelve months after the death of the husband and father. In determining the amount reasonably required by the widow during the twelve months, in the way of 'provisions' 'other property' or money, the appraisers must consider many elements, such as, for example, her age, condition of health and previous standard of living. Reason and common sense dictate that if she dies approximately three months after the death of her husband. as was true in this case, and before the decision of the appraisers, she will not require 'provisions' 'other property' or money for the last nine months of the twelve. In my opinion it is the duty of the appraisers to consider the widow's death as a fact having a direct bearing upon the amount of 'provisions' 'other property' or money needed for her support during the twelve months. To ignore the fact of her death would be unrealistic. To undertake to justify allowance of 'provisions' 'other property' or money for the support of a wife for nine months after her funeral on the theory that the husband would have had to pay her funeral expenses had he survived, would read into the statute a purpose nowhere indicated by its language."

Study of the cases reveals our courts today regard the widow's year's allowance as a sacred cow. Their interpretation all too often achieves the result which was justly decried by Judge Middleton in his dissent, Estate of Croke, supra.

"Such allowance in this case had the inexcusable effect of transferring $4,250 from the estate of the husband to the estate of the wife

so that her heirs will enjoy that amount of inheritance which rightfully belongs to the heirs of the husband. I do not believe such result was intended when §§10509-74 and 10509-75 GC, were enacted."

The first Ohio case enriching the widow's residuary legatees at the expense of the heirs of the husband is **Bane v. Wick, 14 Oh St 505,** the leading case relied upon by Judge Hart in his majority opinion in Estate of Croke, supra. Bane v. Wick is a poor case indeed upon which to found any basic, profound principles of law. In the first place it involved a will which the Ohio Supreme Court in another opinion commented upon as follows, **6 Oh St 14:**

"The testator, evidently, drew the will himself, and seems to have been an illiterate man, unqualified to draft legal instruments requiring precisement of expression, and wholly unaccustomed to a clear or systematic arrangement of his ideas on paper. From these causes there is so much indistinctness, ambiguity and obscurity of expression in the instrument, that, after much and careful consideration, we have found it almost, if not quite, impossible to give it an interpretation satisfactory to our minds."

The Wick will required judicial construction, finally determined in the report at **page 328, Vol. 19, Ohio Reports.** The three reports fail to disclose these important dates: Admission to probate, appointment of executors, widow's election, return of the appraisal and decease of the widow. We learn she filed an answer in the will construction case but was deceased before it was determined.

Nay, Bane v. Wick, supra, miseth the point and ignores the gist of its principal authority, **Dorah's Administrator v. Dorah's Executor, 3 Oh St 293.** There the appraisers made the year's allowance prior to her decease to a widow who survived her husband for 24 days. Judge Ranney said that it was the action of the appraisers, or the court in review of the allowance, that had all the force and effect of an adjudication and effectually withdrew it from the balance of the estate. He expressly reserved the question whether the court might upon a petition for review take into consideration circumstances transpiring after the action of the appraisers. Judge Ranney, having been of counsel, did not participate in Bane v. Wick. Present Ohio law contemplates the probate court may take into consideration such circumstances.

**Sec. 2117.22 R. C.,** provides that "On the petition of an interested person, the probate court may review the allowance made to the widow . . . . increase or diminish it, and make such order in the premises as it deems right." **Sec. 10509-77 GC,** also so provided.

In ignoring (1) the purpose of the allowance, and (2) just what it is that vests at the decedent's death, we arrive at unjust results as in the Croke case, supra.

As the law now stands the heirs of the husband must stand aside to see the widow, and even her friends, entertained at their expense, for the appraisers and probate court are directed to consider her "social position" and standard of living in fixing the allowance. In re Estate of Croke, supra, **In re Estate of Clark, 99 Oh Ap 458, 59 O. O. 244, 125 N. E. 2d 917.**

The rights Barbara Gardner claims under §10509-54 GC, this court will not research. There all that is required is the application of arithmetic by the appraisers when they have made their valuations.

Now that we understand what it is that the widow of Frank Gardner would assert at this 11th hour, this court determines that the exceptions numbers 7 and 9 are well taken. The statute of limitations, §2305.07 R. C., has run against the claims of Barbara Gardner under §§10509-54, 10509-74, 10509-75 GC. Further, the widow by her delay in seeking administration for more than 8 years has by such laches lost her right to a year's allowance. Even Bane v. Wick, supra, indicates the year's allowance may be waived or relinquished, but would imply none under the facts of that case.

How long a delay will constitute a waiver? Certainly 40 years delay will. Evans, Administrator v. Evans, 90 ONP (NS) 589, 13 OCC (NS) 62, 21 OCD 635, affirmed 83 Oh St 482, 94 N. E. 1106. According to In re Estate of Crouse, 44 Oh Ap 31, 13 Abs 652, 184 N. E. 253, 12 years' delay and no demand during her lifetime will not. Crouse's will was probated shortly after he died in 1916 but no executor was appointed until administration of his widow's estate was sought after her death in 1928. With that case we cannot agree.

Counsel for Barbara Gardner advances the case of Hoiles v. Riddle, 16 OCD 363, 4 OCC (NS) 449, reversed 74 Oh St 173, 78 N. E. 219, 113 Am. St. Rep. 946, 4 O. L. R. 38, as authority that the statute of limitations does not commence to run against the widow's rights in her husband's estate until appointment of an administrator. Hoiles v. Riddle was a desperate case and should not be cited as authority for any proposition. An 1863 contract not in writing was sought to be enforced in 1904. On the tenuous theory that in the case of a decedent, as to obligations coming into existence at the death or after the death, there being no person in existence to sue, the statute does not begin to run until appointment of an executor or administrator.

Perhaps if Judge Cook, when the Hoiles case was considered in the Circuit Court of Appeals (4 OCC [NS] p. 452), had been content to apply simply the principle he approved in Judge Gray's opinion in Rauserman v. Blunt, 147 U. S. 647, 37 L. ed. 316, that:

"Second: the bar of the statute cannot be postponed by the failure of the creditor to prosecute or preserve his claim." (4 years delay in procurement of appointment of an administrator.)
and concluded his opinion after he had commented as to Hoiles,

". . . it was her privilege to have had letters issued to any suitable person, and if she wished to preserve her claim, it was her duty to have an administrator appointed and commence her action before the time elapsed to bar her claim."
then the dissenting circuit judge and the supreme court would not have become confused about "judicial amendment." A fictional "judicial amendment," verily a "man of straw," is created upon which to base the court's opinion in the Hoiles case, 74 Oh St 173, supra.

This court regards with disfavor the "no one in existence" theory. Its operation opens the door to stale claims as in the Hoiles case, a

40 year old oral contract with delay of 18 years before procuring administration. This court approves Judge Wright's averment in **Granger's Administrator v. Granger,** a much cited opinion, reported in **Vol. 6, Ohio Reports, page 35:**

"If a creditor would save his debt from the Statute bar, he should take out administration himself."

Exceptions numbers 7 and 9 are sustained and exceptions to this ruling are saved to the administratrix and surviving spouse.