SOUTHERN RY. CO. v. NORTH CAROLINA CORP. COMMISSION et al. SEABOARD & R. R. CO. v. SAME. ROANOKE & T. R. R. CO. v. SAME. RALEIGH & G. R. CO. v. SAME. RALEIGH & A. AIR-LINE R. CO. v. SAME. CAROLINA CENT. RY. CO. v. SAME. ATLANTIC COAST LINE RY. CO. OF VIRGINIA v. SAME. WILMINGTON & W. R. CO. v. SAME. NORFOLK & C. R. CO. v. SAME.[1]

(Circuit Court, E. D. North Carolina. November 4, 1899.)

**1. JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION.**

A suit by a railroad company to restrain the authorities of a state from collecting a tax levied on its property, on the grounds that the assessment on which such tax was levied was made without authority of law, and that such assessment was discriminative, and intended to impose on railroad property an undue share of the burdens of state taxation, is one which involves the construction and application of the provisions of the constitution of the United States prohibiting the taking of property without due process of law, and securing to all persons the equal protection of the laws, of which a federal court has jurisdiction, without regard to the citizenship of the parties.[2]

**2. TAXATION OF RAILROAD PROPERTY — ASSESSMENT — NORTH CAROLINA STATUTES.**

The North Carolina act of March 6, 1899, creating the North Carolina corporation commission, and defining their duties and powers, did not clothe such commission with authority to appraise and assess railroad property for taxation, nor was such authority given by any subsequent legislation.

Charles Price, Judge L. R. Watts, John D. Shaw, George Rountree, and R. O. Burton, for complainants.

Simmons, Pou & Ward, J. C. L. Harris, H. G. Connor, John W. Hinsdale, and C. A. Cook, for defendants.

SIMONTON, Circuit Judge. These are nine bills filed by the complainants whose names appear in the caption against the North Carolina corporation commission, its several members and agents, and the officers of the state whose duty it is to enforce the assessment and collection of taxes. The general features of the bills are the same, and their grounds of complaint are similar. They allege that the North Carolina corporation commission has assessed for taxation the value of the property of each of them, and that in so doing they have acted illegally and without warrant of law. There are four grounds upon which this allegation is based: (1) It is denied that the corporation commission had any power to levy the assessment complained of. (2) It is charged that the method adopted for assessing the value of railroad property differs so materially from that provided for assessing other property in the state as to deny the complainants the equal protection of the law. (3) That there has been in the state of North Carolina a systematic and intentional undervaluation of real and personal property, other than railroad property, with the design to discriminate against railroads, and to cast upon them an undue

[1] Rehearing pending.

[2] As to jurisdiction in cases involving federal questions, see note to Bailey v. Mosher, 11 C. C. A. 308, and, supplementary thereto, note to Montana Ore-Purchasing Co. v. Boston & M. Consol. Copper & Silver Min. Co., 35 C. C. A. 7.

share of the burdens of taxation, for the purpose of relieving such other property of its just proportion of state taxation. (4) That there being this systematic and intentional undervaluation of real and personal property, other than railroad property, the property of complainants has been valued higher than that of individuals. The bills each prayed for an injunction. Upon filing the bills, a rule in each case was issued, requiring the defendants to show cause, on a certain day, why an injunction in each case should not issue as prayed for. In the meantime the ordinary restraining order was passed, retaining matters in statu quo; the complainants in each case, however, having been required to tender and pay into the state treasury the amount of the tax, measured by an assessment plainly unquestionable and conceded to be legal. Bank v. Perea, 147 U. S. 87, 13 Sup. Ct. 194; Railroad Co. v. Clark, 153 U. S. 252, 14 Sup. Ct. 809. The returns have all been made; the affidavits filed on each side, numerous beyond example, have been considered; and counsel have been heard in an elaborate and exhaustive discussion.

The first question which arises in these cases, as indeed in every case, is as to the jurisdiction of the court. It is said that the great majority of the complainants are corporations of North Carolina. But the questions raised are federal questions, under the fourteenth amendment. The assessment for taxation is the first, and perhaps the most important, step in the levy and collection of the tax. If the corporation commission have not the power to assess these complainants, then this is the first step in depriving them of their property without due process of law; and if there be discrimination in the assessment, made with a view of casting upon them the burden of taxation, to the exoneration of other real and personal property, each of them is denied the equal protection of the law. Besides, this would be the taxing of private property for public purposes without compensation. So, each of these cases depends upon the construction and application of the constitution of the United States. This fact gives the court jurisdiction, without regard to the citizenship of the parties. 25 Stat. 433; Ames v. Kansas, 111 U. S. 449, 4 Sup. Ct. 437; Cohens v. Virginia, 6 Wheat. 264. And, if the statutes under which the corporation commission act are in conflict with the constitution of the United States, it and the state officers acting under its proceeding may be enjoined. Pennoyer v. McConnaughy, 140 U. S. 1, 11 Sup. Ct. 699.

The next question is, has the North Carolina corporation commission the power to levy assessment on the property of railroads? The discussion of this question will require an examination in detail of some of the acts of assembly of the state of North Carolina. The North Carolina corporation commission was created by an act of assembly ratified March 6, 1899, and made of force from and after April 5, 1899. It provides for three commissioners,—the first board to be elected by the legislature; all subsequent boards to be elected by the people, beginning with the general election in 1900. The corporation commission is given a general supervision over railroads, steamboat, navigation, and canal companies, express, telegraph, and telephone companies, building and loan associations, banks, and sleep-

ing-car companies.  In the second section of the act the duties of the commission are minutely set out in 24 subdivisions.  It may assist this examination to set them out.  They have power to make rates of freight, passenger, and express tariffs; to make reasonable and just rules for corporations handling express or freight; to make rules to prevent discrimination; to make just rates for use of railroad cars carrying freight or passengers; to prevent rebates; to make through rates for transportation of freight, passengers, or express; to make rules for handling freight and baggage at stations; to make rates for transportation of packages by express companies or corporations; to make rules as to contracts entered into by one railroad company or corporation to carry over any of its line cars of any other company or corporation; to make rates for any telegraph or telephone company; to make rates for rental of telephones, this not to apply to telephone lines hereafter constructed, nor to telephone instruments giving interstate connection, until three years after ratification of the act; to require establishment of stations by any corporation or company engaged in transportation of freight or passengers and the erection of depots; to require the change or repair of stations and additions thereto; to require separate waiting rooms for white and colored races; to require construction of side tracks by any railroad company to industries established or to be established; to exercise the power over banks heretofore exercised by the state treasurer; to appoint persons to examine and report; to give all information to the state treasurer as to the solvency of banks; to exercise certain powers over building and loan associations; to appoint suitable persons to examine them; to collect all fees for these purposes heretofore collected by the auditor of the state; to prescribe rules of practice and proceeding in all matters before them; to perform all the duties, and exercise all the powers, imposed or conferred by chapter 320 of the Public Laws of 1891 and the acts amendatory thereto. This chapter (Laws 1891, c. 320) is entitled "An act to provide for the general supervision of railroads, steamboat or canal companies, express and telegraph companies doing business in the state of North Carolina," popularly known as the "Railroad Commission Act."   It also goes into minute detail as to the powers and duties of the railroad commissioners,—as minutely as does the corporation commission act.   Chapter 320, Acts 1891, was ratified on 5th of March, 1891, and went into effect 1st of April thereafter.  There appears but one amendment to this chapter 320 eo nomine.  This is chapter 206, Laws 1897, "An act to amend chapter 320, Laws of 1891, establishing a railroad commission."  Neither chapter 320, nor chapter 206 of the Laws of 1897, says anything about the assessment of railroad property, nor is any such power apparent in the act of 1899, constituting the corporation commission.

It is said, however, that this chapter 320 has been really amended by acts of the general assembly.  At the same session of the general assembly which passed the railroad commission act the legislature passed an act to provide for the assessment and taxation of property. This act was ratified 9th of March, 1891, and went at once into operation.   This act is known as the "Machinery Act," and it puts in opera-

tion the levy of taxes. At each session of the general assembly a machinery act is passed almost in totidem verbis with that of the previous session. Each machinery act has a repealing clause in these words: "All acts and parts of acts inconsistent with the provisions of this act are hereby repealed." This machinery act, as it was passed session by session, declared how, when, and by whom various classes of property should be assessed. Among these it is provided that the commissioners elected from time to time under the authority of an act to provide for the general supervision of railroad, steamboat, or canal companies, express and telegraph companies, doing business in the state of North Carolina, shall constitute a board of appraisers and assessors for railroad companies. Did the machinery act of 1891, or any of the machinery acts since that date, operate as an amendment of the railroad commission act?

The machinery act of 1891 went into operation 9th March. The railroad commissioners act went into operation 1st April. It would be somewhat of an anomaly if an amending act should precede the act amended. The railroad commissioners act of 1891 (chapter 320) is entitled "An act for the general supervision of railroads," etc., "doing business in the state of North Carolina." The enactments of the act follow closely its title. The machinery act does not in terms add to the duties of the railroad commission, but it declares that the commissioners elected upon that commission shall constitute a board of appraisers and assessors. The act provides a mode of assessment of all kinds of property, and designates the several classes of persons by whom such assessment shall be made. When it comes to railroad property, it creates a board composed of the individuals elected to the railroad commission for a specific purpose,—the appraisement and assessment of the railroad property.

The general assembly at the same session had before it the bill providing for the supervision of railroads and other corporations, and also the machinery bill. They were ratified on the same day, and must have been considered about the same time. Entering minutely and in detail, and at general length, into the duties of the railroad commission, not one word is said as to the assessment of railroad property for taxation. Nor does the machinery act intimate any intent to amend the railroad act. If that had been the intent of the machinery act of 1891, and if it did in fact amend the railroad commissioners act, why did the general assembly deem it necessary each session thereafter to repeat the same provision in each machinery act?

Chapter 320, Acts 1891, was a permanent act. Once amended, it would remain so until the will of the legislature changed. Yet we see the same provision repeated session after session, in the same words; evidently the mind of the legislature recognizing that the machinery act was a temporary act, making provision for the occasion, and not intended to affect general legislation. This view is strengthened by the course pursued by the legislature when it desired, in terms, to amend the act. In 1897 was passed chapter 206, entitled "An act to amend chapter 320, Laws of 1891, establishing a railroad commission." The title shows the purpose of the act. Its several

sections made important changes in it, and not one word is said of this grave power of appraisement and assessment of railroad property.

The North Carolina corporation commission act goes into an exhaustive declaration of the powers and duties of the commission with respect to railroads. Not satisfied with this declared enumeration of these duties, it in general terms declares that it shall perform all the duties, and exercise all the powers, imposed or conferred by chapter 320 of the Public Laws of 1891 and acts amendatory thereto. This act was ratified 6th of March, 1899. Surely, if the general assembly intended that the corporation commission should act as a board of appraisers and assessors, as well as a board of supervisors of railroad property, it would scarcely have omitted this among the other duties of the commission; and, if it supposed that the provisions of the machinery act had amended chapter 320, it would not have passed, two days after the ratification of the corporation commission act, a machinery act, constituting the commissioners elected from time to time under the authority of an act to provide for the general supervision of railroad, steamboat, or canal companies, express and telegraph companies, doing business in the state of North Carolina, a board of appraisers and assessors for railroad, telegraph, canal, and steamboat companies.

There is another consideration: The act to establish the North Carolina corporation commission, though ratified 6th of March, 1899, did not go into effect until from and after the 5th of April, 1899. By an act ratified the same 6th of March, 1899, the general assembly declared that "chapter 320, Pub. Laws 1891, and all acts amendatory thereof and supplementary thereto, be, and they are hereby, repealed." This act was of force from and after April 4, 1899. It repeals in toto every provision of the act of 1891, and all acts not only amendatory thereof, but supplementary thereto. So, when the corporation commission act speaks as of the day it was of force, subdivision 23, § 2, of the act referred to a law which had been repealed in toto.

It is impossible, after examining the acts of the general assembly of 1899, to escape the conclusion that, in the mind of that body, the special board for the appraisement and assessment of the railroad property was constituted of the three persons who had been elected or appointed railroad commissioners. We have seen the provisions of the machinery act of that year, adopted notwithstanding that the institution of the corporation commission had been determined upon. So, in chapter 11 of that year ("Revenue Act"), in sections 41, 42, 43, and 44, the railroad commissioners alone are instructed with regard to the appraisement and assessment of railroad property. That act was ratified, and was of force March 8, 1899. And, in section 60 of the same act, the power to revise the assessment for taxation of railroad property is given to the railroad commission or any body succeeding to their powers. The act creating the corporation commission had been ratified two days before this act. If the general assembly intended that commission in the words, "any body succeeding to their powers," is it not reasonable to suppose that it would have said so, and would not have left it to inference only?

So, also, chapter 687 of the Laws of 1899 authorizes the railroad commission, the corporation commission, or such board as shall succeed to their duties, to assess property which has escaped taxation. This act was ratified and was of force 8th March, 1899. It recognizes the existence of the railroad commission and of its powers, and leaves to inference entirely the idea that one is substituted for the other. If no other act creates the corporation commission into a board for the appraisement and assessment of railroad property, this act cannot do so by indirection.

It must be borne in mind that the legislation now under discussion is not remedial legislation. In all such cases courts labor to arrive at the beneficent intent of the legislature and seek to secure it full effect. Com. v. Kimball, 24 Pick. 370, and cases collected in 23 Am. & Eng. Enc. Law, 309, 362, and 24 Am. & Eng. Enc. Law, 358. We are construing statutes imposing taxes and burdens on the taxpayer. In all such the rule is changed. "The highest power that a sovereign—the lawmaking power—can confer is the power to tax; and every act conferring that power must express it plainly, and the act so expressing it must be strictly construed." Suth. St. Const. 459 et seq. In every case of doubt, such a statute is construed against the government. U. S. v. Wigglesworth, 2 Story, 369, Fed. Cas. No. 16,690.

Says Lord Chancellor Cairns in Partington v. Attorney General, L. R. 4 H. L. 100, 122:

"As I understand the principle of all fiscal legislation, it is this: If the person sought to be taxed comes within the letter of the law, he must be taxed, however great the hardship may appear to the judicial mind to be. On the other hand, if the crown, seeking to recover the tax, cannot bring the subject within the letter of the law, the subject is free, however apparently within the spirit of the law the case might otherwise appear to be. In other words, if there be admissible in any statute what is called an 'equitable construction,' certainly such a construction is not admissible in a taxing statute when you can simply adhere to the words of the statute."

See, also, U. S. v. Wigglesworth, 2 Story, 369, Fed. Cas. No. 16,690; Twine Co. v. Worthington, 141 U. S. 474, 12 Sup. Ct. 55; Rice v. U. S., 4 C. C. A. 104, 53 Fed. 910.

On the whole, the conclusion cannot be resisted that, either intentionally or accidentally, the corporation commission was not clothed with the power of appraising and assessing railroad property, and that their attempted action herein complained of is without authority of law.

It is to be regretted that this conclusion renders unnecessary the discussion of the merits of this case, presented so ably and fully by counsel on both sides. The conclusion reached, while it stops the hand of the court now, simply postpones the decision on the grave questions underlying the cases. This postponement, however, will not operate to excuse the complainants from the payment of taxes. Under Russell v. Ayer, 120 N. C. 180, 189, 27 S. E. 133, the provisions of the revenue act of 1897 are in full force, and the taxes therein provided must be paid. Let the injunctions issue as prayed for in each bill.