The plaintiff alleges in his complaint, that by the act of 1891, ch. 320, a railroad commission was established, and that in March, 1897, he was duly elected a commissioner, his term of office commencing April 1, 1897, to continue six years, and that he entered upon his office and discharged its duties up to April 4, 1899. That the defendant, claiming to be authorized under act of 6th March, 1899, entitled "An act to repeal the Railroad Commission," also an act of the same date, entitled "An act to establish the North Carolina Corporation Commission," unlawfully intruded upon and usurped his office, and still holds the same.
The defendant, answering the complaint, relies upon the authority of the acts of 1899 for his right to the office now held by him.
Upon the pleadings and admissions his Honor rendered judgment in favor of defendant and against the relator. The relator excepted and appealed.
FURCHES, J., writes the opinion of the Court.
MONTGOMERY, J., writes opinion concurring in the result.
CLARK, J., writes dissenting opinion.
The General Assembly of 1891, ch. 320, passed and ratified an act established a railroad commission, to consist of three commissioners. Under the provisions of this act the relator, (258) Abbott, on the . . . . . .day of March, 1897, was duly elected one of the three commissioners, provided for in the act, for a term of six years thence next ensuing. Under this election he was, on the 1st day of April, 1897, duly qualified and inducted into said office, and continued therein and performed the duties thereof and exercised the powers and privileges pertaining to said office until the 1st of April, 1899, when the defendant, Beddingfield, as the relator alleges (with the aid and connivance of the other two members of said commission), unlawfully entered into, took possession of, and ousted the relator of his said office; and that the said Beddingfield continues to unlawfully hold said office, and to prevent the relator from entering into the same or to exercise the duties and functions thereof.
The defendant admits that he entered into the office and ousted the relator therefrom. But he says he did so with authority of law, and that he is now, and has been, lawfully holding and performing the duties and exercising the functions of said office, ever since he so lawfully entered into the same.
The defendant says the General Assembly, on the 6th day of March, 1899, passed an act (ch. 506) which repealed the act of 1891 (ch. 320), under which the relator was elected; and that on the 6th of March, 1899, said General Assembly passed another act (ch. 164) which established a "Corporation Commission" to consist of three commissioners, and that he was duly elected, qualified and inducted into said office under said act of the 6th of March, 1899, and rightfully holds the same and exercises the duties and functions of said office under said act and said election.
We note the fact that the defendant alleges in his answer that chapter 506 was passed and ratified on the 4th day of March, 1899. But there is no finding of the court as to this allegation, the burden (259) of which was on the defendant. And as it appears from the printed volume of the Laws of 1899 that it was ratified on the 6th day of March, 1899, we will so treat it (although it is probable that it is not very material whether it was passed on the 4th or the 6th).
This brings us to the consideration of the question presented and ably argued on both sides, as to whether the legislation of 1899, ch. 506, and ch. 164, repealed the act of 1891, ch. 320, and the acts amendatory thereof or supplementary thereto. As important as this question *Page 182 
is, to our minds, it has in principle, been decided by this Court in a number of cases, and it is only necessary that we should refer to some of these cases and apply the principles announced in them to the present case.
It seems to us that no one can read the Acts of 1899, chs. 506 and 164, without coming to the conclusion that it was not the purpose of the Legislature to abolish the Railroad Commission — the duties and functions of that institution or commission, but to abolish — to change — the officers holding and exercising the duties and functions of the commission. And in saying this we must not be understood as criticising the action of the Legislature or impugning its motives in passing these acts. We have no doubt but what those voting for these acts thought they had the right to do this, and to put the office the relator held in the hands of a party in harmony with the political sentiment of that party which controlled the Legislature; that they thought this legislation constitutional, or that they were at the time inadvertent to the question of its constitutionality. King v. Hunter, 65 N.C. 603. But it presents this question for our determination so far as it affects the rights of the relator. This is the question before us, and we consider it with a view to this single question. If it is (260) unconstitutional as to him — if it does not affect his vested right of property in this office he was holding — then we see no constitutional objection to this legislation. But, on the other hand, if it does affect his vested rights and takes from him his office with its emoluments, before the expiration of the term for which he was elected, then, to that extent, it is unconstitutional and void.
Chapter 506, and chapter 164, both passed and ratified on the 6th day of March, 1899, are in pari materia and must be read and considered together for the purpose of ascertaining their meaning. Wilson v. Jordan,124 N.C. 687; Rhodes v. Lewis, 80 N.C. 136. When these acts are read together, it is seen that, on the same day (March 6, 1899), the Legislature, professing to repeal the act of March, 1891, under which the relator, Abbott, claims to hold, reenacted the act of 1891, in almost the very words in which it was originally enacted, and which was a part of the statute law of the State on the 6th of March, 1899. Indeed, it does more than this: The Legislature of 1897 passed an amendment to the act of 1891 (ch. 206), extending very greatly its jurisdiction and powers. This amendatory act of 1897 (ch. 206), gave the Railroad Commission jurisdiction over street railways, express and telegraph companies, and power to require telegraph companies to extend their lines and establish new agencies, to make rules for receiving, forwarding and delivering messages, and makes a violation of *Page 183 
these rules a penalty. None of these powers did the Railroad Commission have under the original act of 1891.
The 42d section, chapter 169, of the Acts of 1897, by express terms, made the Railroad Commission a board of appraisers of railroad property in these words: "Shall constitute a board of appraisers and assessors for railroad, telegraph, canal and steamboat companies."
The act of 1899, chapter 164, which was passed the same day of (261) the repealing act, in declaring the powers of the commission, reenacts the statute claimed by the defendant to be repealed, in section 23, on page 295, in the following words: "To perform all the duties and exercise all the powers imposed or conferred by chapter three hundred and twenty (320) of the Public Laws of eighteen hundred and ninety-one and the acts amendatory thereto."
Here we have an act professing to repeal chapter 320, Acts 1891, and in an act passed the same day, and under which the defendant claims to hold his office, it is reenacted with all amendments thereto. Thus we see that the act of 1891 (ch. 320) is expressly reenacted and continued in force by the act of 1899, ch. 164. State v. Williams, 117 N.C. 753; Wood v.Bellamy, 120 N.C. 224; Wilson v. Jordan, supra.
The act of 1899, ch. 164, does not constitute the Corporation Commission a board of appraisers of railroads, etc., and it seems to be at least doubtful whether chapter 11, section 41, or any other section of that act constitutes the "Corporation Commission" a board of appraisers and assessors for railroads, telegraphs, canals and steamboat companies, as the act of 1897, ch. 169, sec. 42 did. And if the Corporation Commission is considered a thing separate and distinct from the Railroad Commission, and the act of 1891, establishing the Railroad Commission, and the acts amendatory thereof, are repealed — dead, and of no validity — it is at least doubtful whether the Corporation Commission has jurisdiction to assess the taxes on railroads, etc., which constitutes the principal powers and duties of the commission. But if the legislation of 1899, chs. 506 and 164, are construed to be amendments to the act of 1891, establishing the Railroad Commission, and to the act of 1897, which amended the act of 1891, then the powers of the commission to assess the taxes on railroads, etc., it would (262) seem, are ample and undisputed.
Why is this not the proper construction to put upon this legislation? We see by an examination of the act of 1891, establishing the Railroad Commission, and the act 1899, which the defendant claims established the Corporation Commission, that they are in substance the same. This will fully appear by reading the two acts together, observing the following order of sections: *Page 184 
ACT OF 1891. ACT OF 1899.
Section 1 becomes section 1 embodying Act of April 1, 1891, making court of record. Section 2 becomes sections 31, 30 and 29. Section 3 becomes section 12. Section 4 becomes section 13. Section 5 becomes section 2, in part. Section 6 becomes section 14. Section 7 becomes section 7. Section 8 becomes last part of section 1. Section 9 becomes section 6. Section 10 becomes section 15. Section 11 becomes section 16. Section 12 becomes section 26 and section 33. Section 14 becomes section 17. Section 15 becomes section 27. Section 16 becomes section 9. Section 17 becomes section 18. Section 19 becomes section 8. Section 20 becomes section 2, subsections 13 and 14. Section 21 becomes section 19. Section 22 becomes section 20. Section 23 becomes section 11. Section 24 becomes section 21. Section 25 becomes section 22. Section 26 becomes section 2, subsections 8 to 11. Section 27 becomes section 10. Section 28 becomes section 32. Section 29 becomes section 28. Section 30 becomes section 24. Section 31 becomes section 25.
(263) This reference is made to show how completely the act of 1891 is incorporated in the act of 1899; while to our minds it was hardly necessary to be referred to for the purpose of showing their identity, after it had been shown that the Legislature of 1899, in the very act under which the defendant claims to hold, had in so many words reenacted the Act of 1891, and the amendments thereto.
It is established to be the law of this State by Wood v. Bellamy,120 N.C. 221; Day v. State Prison, 124 N.C. 362; Wilson v. Jordan,124 N.C. 683, that an act is not repealed by the Legislature's saying *Page 185 
it is repealed, when the same act or contemporaneous acts show that it is not repealed. And it is established to be the law of this State by Wilsonv. Jordan, supra, and the authorities there cited, and by Arendell v.Worth, at this term, that contemporaneous legislation about the same subject matter is in pari materia, and may be read and construed together.
It is established law in this State by Hoke v. Henderson, 15 N.C. 1, which has been approved in as many as forty cases decided by this Court, as shown in the concurring opinion of Justice DOUGLAS in Wilsonv. Jordan, by Wood v. Bellamy, and Day v. State Prison, supra, that a public office, to which there is attached a salary, is a vested interest — a property in the holder, and as such property (264) holder, he is protected by the law and Constitutional of the United States and the laws and the Constitution of the United States.
It is the settled law of this State, Wood v. Bellamy, Day v. StatePrison, and Wilson v. Jordan, supra, that the change of the name from Railroad Commission to that of Corporation Commission does not deprive the relator of his office — his legal and constitutional rights to hold said office.
If we consider the two Acts of 1899 in pari materia, and read them together, as we are bound to do, unless we disregard all the former decisions of this Court, we find that the two acts of 1899 did not repeal the act of 1891 or the act of 1897, but are amendatory thereof; that the reenactment of the act of 1891 and the act of 1897, amendatory thereof, in the same legislation that it is contended by defendant repealed them, had the effect to continue in force the acts of 1891 and 1897. State v.Williams, supra.
So it seems to us that every material point in this case has been passed upon and decided by the cases we have cited, and that the relator is entitled to recover of the defendant the office sued for, unless it shall appear that there is something — some fact — shown by the defendant that distinguishes this case from the principles decided in the cases cited.
We now propose to consider those facts and the law arising thereon called to our attention, and claimed by defendant to distinguish this case from those cited, or at least to those that seemed most relied upon in the argument. We would consider them all if we thought it material to the defendant to do so.
And it is interesting to see how many things can be suggested, and how many reasons can be assigned by able and ingenious counsel on the argument of an important case like this. *Page 186 
(265) The first ground taken by defendant was an attack on Hoke v. Henderson. This we will not notice further than to say that if any doctrine can be firmly settled in this Court, it is that of Hoke v.Henderson, which in our opinion is able to stand alone. But it certainly should be considered by the profession to be settled, when it appears that it has been cited with approval in more than forty cases, and not a single decision of the Court to the contrary.
Next, the cases of Ewart v. Jones and Cook v. Meares, are relied on as authority for defendant — when these cases show that no such doctrine as Hoke v. Henderson was presented in either of these cases; nor is Hoke v.Henderson referred to, nor the doctrine involved in that case; it was not invoked, considered or passed upon in either of them.
Next, the cases of Wood v. Bellamy, Day v. State Prison, and Wilsonv. Jordan, are relied on as authority for the defendant. This may seem strange, when these cases were expressly decided on the doctrine ofHoke v. Henderson. It is thought by the learned counsel for defendant that they can see some shade of distinction between some expressions used in writing the opinions in those cases and the present case. They say that it is said the "offices are identically the same." It is also said they are substantially the same. But suppose the term "substantially the same" had not been used by the Court in writing those opinions: could that make the authority for the defendant in this case? If he had authorities sustaining the contention of the defendant, this criticism, it seems to us, might have been made to distinguish the cases of Wood v. Bellamy, Day v. State Prison and Wilsonv. Jordan from this case, and to weaken it as authority for the plaintiff. And we can only see how the defendant may use it in this way, in this argument — not as authority for his position, but only, if possible, to weaken it as authority for the plaintiff.
(266) But the practice of the learned counsel for the defendant has no doubt caused him to observe that it is rarely ever the case that a case cited as a precedent — as authority — is identical with the case under discussion, to sustain which it is cited. But it is where the principle involved in the case cited is the same or substantially the same as in the case under discussion. That is why the cases of Hoke v.Henderson, Wood v. Bellamy and Wilson v. Jordan were cited by the plaintiff — because they decide the principle that the relator of the plaintiff had an interest, a property, in the office sued for that could not be taken from him and given to the defendant. If it be true, as contended by the defendant, that the addition of a few more powers and duties in the act of 1899 repealed the old act and created a new *Page 187 
institution — a new board — why is it that the act of 1897 (ch. 206) which increased the powers and jurisdiction of the old board more than the act of 1899 increases the powers and jurisdiction of the Corporation Commission over those of the old board, did not have the effect of destroying the old board? Yet this was never contended or even thought of so far as we know; while it would seem that if this contention of the defendant be true, it would have had that effect.
If this contention of defendant be true, why does not the extension of the powers and duties of sheriffs and clerks have the effect of abolishing their offices and turning them out? If this were so, we would have no more trouble with Hoke v. Henderson and Wood v. Bellamy. All that would be necessary to do would be for the Legislature to add some new duty to the office, and out the incumbent would go.
The next and last stand the learned counsel for defendant makes is that this Court has, in effect, repudiated the doctrine of Hoke v.Henderson and Wood v. Bellamy in the case of Ward v. ElizabethCity, 121 N.C. 1, and defendant contends that the Court can (267) not decide this case for the plaintiff without overruling Ward v.Elizabeth City. The learned counsel must have overlooked the fact that Hokev. Henderson and Wood v. Bellamy are both cited with approval in Ward v.Elizabeth City, and it is distinguished from those cases in the following language: "This case differs from Wood v. Bellamy, 120 N.C. 212, in that, there the new charter was so nearly a repetition of the old one that it was held to be merely an amendment of the former one, not a destruction of it, and hence the offices under such charter were not vacated. The only restriction upon the legislative power is that after the officer has accepted office upon the terms specified in the act creating the office, this being a contract between him and the State, the Legislature can not turn him out by an act purporting to abolish the office, but which in effect continues the same office in existence. This is on the ground that an office is a contract between the officer and the State, as was held inHoke v. Henderson, 15 N.C. 1, and has ever since been followed in North Carolina down to and including Wood v. Bellamy. " It would therefore seem that Ward v. Elizabeth City is not in conflict with Hoke v. Henderson andWood v. Bellamy, and does not overrule or repudiate the doctrine announced in those cases, but it expressly adopts and approves of the doctrine announced in those cases. And instead of sustaining the defendant's contention, it is authority for the plaintiff's contention. So we see nothing in the facts of this case, nor in the authorities cited by the defendant, that distinguishes this case from Hoke v. Henderson, Wood v.Bellamy, Day v. State Prison *Page 188 
and Wilson v. Jordan. This being so, those cases must control our judgment in deciding this case.
There is error in the judgment appealed from, and the relator (268) is entitled to the relief demanded in his complaint — to enter upon and to exercise the rights and functions of his said office and to discharge the duties of said office and to receive the emoluments thereof. The defendant, Beddingfield, is not entitled to have and to hold said office, nor to the emoluments thereof. Let judgment be entered here and the writ to issue from this Court.
Error.