Mr. Justice CLARK prefixes the following statement of the case to the opinion:
At the Fall Term, 1898, of Burke Superior Court the following indictment was found by the grand jury:
The jurors for the State, upon their oath, present: That the Southern Railway Company, a common carrier, a corporation doing business in said Burke County, late of the county of Burke, on the 1st day of January, A.D. 1897, with force and arms, at and in the county (667) aforesaid, unlawfully and willfully did give undue and unreasonable preference to one T. N. Hallyburton, by giving said T. N. Hallyburton a free pass over the road of the said defendant company, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State.
J. F. SPAINHOUR, Solicitor.
By virtue of chapter 371, Laws 1899, all criminal proceedings pending in the Superior Court of Burke were transfered [transferred] and removed to the Western Criminal District Court, created by that act. At the June *Page 472 
Term, 1899, of said criminal court, the grand jury returned a second bill of indictment into court, as follows:
The jurors for the State, upon their oath, present: That on the 1st day of January, A.D. 1898, the Southern Railway Company was a corporation operating the Western North Carolina Railroad, a line of railway located wholly within the State of North Carolina, from Paint Rock, a point on the boundary line between the States of North Carolina and Tennessee, to Salisbury, in the said State of North Carolina, and doing the business of a common carrier in the said State of North Carolina, subject to the provisions of chapter 320, Public Laws of 1891; and that the said Southern Railway Company required and received of persons traveling over its said line of railway a regular first-class passenger fare of three and one-quarter (3 1/4) cents per mile for each passenger.
And the jurors aforesaid, on their oath aforesaid, do further present: That the said Southern Railway Company, on the day [and] year aforesaid, at and in the county of Burke and State aforesaid, unlawfully and willfully did collect and receive from one T. N. Hallyburton a less compensation for the transportation of the said T. N. (668) Hallyburton from the town of Morganton, in said county of Burke, a station on its line of railway, to the town of Salisbury, another station thereon, in said State, than it collected, demanded and received for the transportation of other passengers over its said line of railway from the said town of Morganton to the said town of Salisbury, for a like and contemporaneous service, in the transportation of passengers in its first-class carriages under substantially similar circumstances conditions.
And the jurors aforesaid, on their oath aforesaid, say that the said Southern Railway Company did then and there, in county and State aforesaid, and in the manner aforesaid, willfully and unlawfully and unjustly discriminate in the collection of passenger fares in favor of the aforesaid T. N. Hallyburton and against other persons to whom like and contemporaneous service was rendered, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State.
And the jurors aforesaid, on their oath aforesaid, do further present: That on the 1st day of January, in the year of our Lord one thousand eight hundred and ninety-eight, the Southern Railway Company was a corporation operating certain lines of railway in the State of North Carolina as a system of trade, traffic and transportation therein, and in the operation thereof was doing the business of a common carrier in the said State of North Carolina, subject to the provisions of *Page 473 
chapter 320 of the Public Laws of 1891; and that the said Southern Railway Company demanded and received a regular passenger fare of three and one-quarter (3 1/4) cents per mile for passengers traveling in its first-class carriages over its said lines of railway.
And the jurors aforesaid, on their oath aforesaid, do further (669) present: That the said Southern Railway Company, on the day and year aforesaid, and at and in the county aforesaid, willfully and unlawfully did make and give undue and unreasonable preference and advantage to one T. N. Hallyburton, by then and there carrying the said T. N. Hallyburton as a passenger free of charge over its line of railway lying and situate wholly within the State of North Carolina, and known as the Western North Carolina Railroad, from the town of Morganton, in said county of Burke, to the town of Salisbury, in said State, the said North Carolina Railroad being then and there one of the lines of railway aforesaid operated by the said Southern Railway Company as a part of its system aforesaid, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State.
AVERY, Solicitor.
Counsel for defendant moved to quash the indictment upon the grounds:
1. That the bill failed to charge specifically that upon the same train upon which the witness for the State was carried there were other passengers who paid fare or passage.
2. On the ground that the act of 1891, chapter 320, under which the presentment was made, was repealed, to take effect on April 4, 1899, and the act creating the Corporation Commission became operative on the 5th of April, 1899, and, therefore, that the defendant could not be convicted on the charge.
The court refused the motion upon the first ground, but allowed it upon the second, and ordered that the indictment be quashed. The solicitor for the State appealed to the Superior Court of Burke County. In that court, the judgment of the criminal court was confirmed. The solicitor for the State excepted and appealed.
The two indictments are, in law, to be treated, says State v. Perry, 122 N.C. at p. 1020, "as in effect two counts in the same bill, State v.McNeill, 93 N.C. 552; State v. Johnson, 50 N.C. 221; and if either is good, the good count will support a verdict, State v. Toole, 106 N.C. 736, and numerous cases there cited"; and of course, if either is good the judgment quashing the bill was error.
The defendant renews in this Court his motion to quash for insufficiency of the indictment, as its refusal was not brought up by the appeal of the State. This he can do. Rule 27 of this Court, 119 N.C. 939. The second count in the bill is so full and explicit as to need no discussion. It is in substance the same as that upon which a conviction for this offense was sustained in State v. Southern Railway Co., 122 N.C. 1052. Though not discussed in the opinion, the same motion was made and argued before us in that case, and the judgment sustaining the conviction necessarily implied that the objection to the validity of the bill was overruled.
The first count alleges that the defendant, a common carrier . . . unlawfully and willfully did give undue and unreasonable preference to one T. N. Hallyburton by giving said T. N. Hallyburton a free pass over the road of the defendant company. This is defective, in that it fails to allege that by virtue of such free pass, said Hallyburton received free transportation, which would be an undue preference, forbidden by the statute, equally, whether it was given upon a free pass from an official, or by a verbal order, or upon a ticket or mileage book not in truth paid for, but donated by the company. It is the (671) fact of discrimination, and not the method by which it is done, which constitutes the offense, though the method of violation may, and doubtless should be, charged in the indictment, to the end that the common carrier may be more fully prepared to meet the charge.
There are discriminations which require more explicit allegation, as for instance, illegal rebates upon freight charges, and the like, (U.S. v.Hanley, 71 Fed. Rep., 672), but as the common carrier carries for hire, the allegation that it gave a person named undue preference by transporting him free ex vi termini alleges discrimination. There are sections of the act creating this offense, which authorizes common carriers to grant free transportation in specified cases, but not being within this section it is not necessary in the indictment to make the negative averment that Hallyburton did not belong to one of the excepted classes. State v. Harris,119 N.C. 811; State v. Bynum, 117 N.C. 749. If he did, it would be matter of defense. State v. Downs, 116 N.C. 1067; State v. George,93 N.C. 567. *Page 475 
If the short form set out in the first count had not been defective in the particular indicated, we are inclined to think (though we do not now pass upon it), it would have been sufficient. It would be no benefit to the defendant to require the solicitor to exhaust time and labor in drafting the long and tedious instrument which constitutes the second count, if a shorter allegation can express "the charge against the defendant in a plain, intelligible and explicit manner, which is all the statute exacts. Code, sec. 1183. The General Assembly has authorized the English form of indictment for murder (ch. 58, Laws 1887), which can be sufficiently and fully set out in three lines, State v.Arnold, 107 N.C. 861, 863; and all other indictments are greatly simplified, State v. Ridge, at this term. Certainly information can be conveyed to a common carrier, employing intelligent (672) servants and attorneys, that it is charged with violating the law against undue preference and discrimination, by carrying a passenger free, without using the above prolix form, covering two and a half printed pages — more than a thousand words.
Counsel argued to us that it must be charged and proved that at the same time and on the same train there were other passengers paying fare. We do not so understand the law (though this, in fact, is explicitly charged in the second count), for as the common carrier carries for hire, it would have been equally a preference and discrimination against the public if this had been a special train carrying a solitary dead-head, or a train composed entirely of that class whirled away, possibly, to some political convention. In fact, either of these cases would be an aggravation of the offense instead of an excuse. As the common carrier is dependent for its profits upon its receipts, the carrying of those free who should pay (not being in the class excepted by law) necessarily adds to the cost of their transportation to the charges exacted of those who pay, and such cost would be increased if the train, on a given occasion, carries all its passengers free, whether it is one man only in solitary and lonely state, or a car or train load, and this would equally violate another purpose of the law, which is to prohibit the many evil results which must be the necessary consequence of quasi public corporations having the power to discriminate in their charges.
The subject need not be further treated from this standpoint, as the purpose and constitutionality of the statute have been fully and carefully considered by MONTGOMERY, J., upon a previous indictment against the same defendant, 122 N.C. 1052.
The other point, and the one principally relied on by the defendant is that, the statute under which the indictment was drawn, Laws 1891, ch. 320, sec. 4, is repealed by ch. 506, Laws 1899, (673) *Page 476 
but it was held at this term, in Abbott v. Beddingfield, that chapter 164, Laws 1899, creating the Corporation Commission, which was enacted on the same day as chapter 506, in effect reenacted and continued in force chapter 320, Laws 1891. It necessarily follows, therefore, that this indictment has lost none of its vitality by virtue of any act which merely amended and continued in force the statute under which it was drawn.
Nor, indeed, would the condition of the defendant be any better if the Court had adopted the view presented in the dissenting opinion inAbbott v. Beddingfield. That went upon the ground (so far as this matter is concerned), that the two acts taken as a whole were not the same. But there was, and can be, no controversy, that section 4, of chapter 320, Laws 1891, under which the defendant is indicted is precisely the same, in totidem verbis, with section 13 of chapter 164, Laws 1899, which was enacted on the same day at which the former statute was repealed, and it was held in State v. Williams, 117 N.C. 753, as follows: "The reenactment by the Legislature of a law in the terms of a former law at the same time it repeals the former law, is not, in contemplation of law, a repeal, but it is a reaffirmance of the former law, whose provisions are thus continued without any intermission. Bishop Stat. Crimes, sec. 181; State v. Sutton, 100 N.C. 474." To same effect, State v. Gumber, 37 Wis. 298; Code, sec. 3766. Whatever difference of opinion there may be as to the essential identity of the two acts as a whole, there is none as to the section creating the offense for which the defendant is indicted. The provision that the former act should go out of existence after April 5, and that the new act should take effect after April 6, is not a break in the continuity (674) of the existence of section 4, now section 13, but merely a suspension for one day of its operation. It had no effect upon this section, which was identical in both acts, other than to make April 5 a dies non, and the defendant could not have been convicted of this offense if committed on that day. Indeed, the decision of the Court in Abbott v.Beddingfield is that this is true of the entire act of 1891, and, as the greater includes the less, it would necessarily embrace the single section of the act for the violation of which the defendant stands indicted.
The judgment quashing the indictment is set aside. This will be certified direct to the Western Criminal Court of Burke County, that it may proceed according to law.
Reversed.
Cited: McNeill v. R. R., 132 N.C. 155; S. v. Holder, 133 N.C. 711;S. v. R. R., 145 N.C. 550. *Page 477