SOUTHERN RY. CO. v. NORTH CAROLINA CORP. COMMISSION et al. SEABOARD & R. RY. CO. v. SAME. ROANOKE & T. R. CO. v. SAME. RALEIGH & G. RY. CO. v. SAME. RALEIGH & A. AIR-LINE RY. CO. v. SAME. CAROLINA CENT. RY. CO. v. SAME. ATLANTIC COAST-LINE RY. CO. OF VIRGINIA v. SAME. WILMINGTON & W. RY. CO. v. SAME. NORFOLK & C. RY. CO. v. SAME.

(Circuit Court, E. D. North Carolina. January 12, 1900.)

FEDERAL COURTS—FOLLOWING STATE DECISIONS—CONSTRUCTION OF STATE STATUTES.

    The decision of the highest court of a state, construing a state statute, or determining whether or not a statute has been repealed by a subsequent act, will be recognized as authoritative by a federal court, subject to certain exceptions, as where prior acquired rights are affected; and, where such court has independently rendered a contrary decision, it will be recalled, if still within the court's control, in deference to a later decision of the state court.[1]

In Equity. On rehearing.
For former opinion, see 97 Fed. 513.

SIMONTON, Circuit Judge. These cases having been heard together, an opinion was filed directing that injunctions issue as prayed for in the several bills. 97 Fed. 513. Before the expiration of the term within which the opinion was filed, and therefore while the cases were within the control of this court, a petition for rehearing was filed by the defendants. After due notice to all parties, this petition was heard, and full argument had thereon. The petition seeks to reopen the cases, because, as is alleged, the supreme court of North Carolina has rendered a decree construing the acts of the legislature of North Carolina, and reaching a different conclusion from that of this court.

The legislature of North Carolina, in 1891, passed an act to provide for the general supervision of railroads, steamboat or canal companies, express and telegraph companies, doing business in the state of North Carolina, being chapter 320 of that year, and popularly known as the "Railroad Commission Act." This act constituted a railroad commission, consisting of three members, elected

---

[1] As to state laws as rules of decision in federal courts, see note to Wilson v. Perrin, 11 C. C. A. 71, and, supplementary thereto, note to Hill v. Hite, 29 C. C. A. 553.

by the general assembly, holding their offices for a term of years, removable, under certain circumstances, by the governor, who in such case could fill the vacancy so created, and enjoying a salary of $———. The act, in minute detail, specifies the duties of this board. This act went into effect on 1st April, 1891. It was amended once by name by chapter 206, Acts 1897. The original act and its amendment give the railroad commission full power of supervision over the management of railroads. Neither of them make any reference whatever to the assessment and taxation of railroad property. At the session of 1891 (9th March), the legislature passed what is known as the "Machinery Act." This is an act providing the ways and means of meeting the expenses of the state government in the assessment of property and the collection of taxes, and seems to be passed for an occasion, and so to be temporary in its character. Each year the legislature passes a machinery act having almost identical provisions. This would be wholly unnecessary if the act were permanent in its character. In this machinery act of 1891 is section 44, as follows:

"The commissioners elected from time to time under the authority of an act to provide for the general supervision of railroads, steamboat or canal companies, express and telegraph companies, doing business in the state of North Carolina, shall constitute a board of appraisers and assessors, for railroad, telegraph, canal and steamboat companies."

This same provision is repeated year by year in the machinery act of each year, from 1891 to 1899, inclusive. At the session of 1899, two acts were ratified on 6th March, 1899. The one of these declared "that chapter 320, Public Laws of 1891, and all acts amendatory thereof and supplementary thereto, be and the same are hereby repealed." The other of these was an act to establish the North Carolina corporation commission. This act provided for the election, by the general assembly passing it, of three commissioners, who shall have general supervision of railroads, steamboat, navigation, and canal companies, express, telegraph, and telephone companies, building and loan associations, banks, and sleeping-car companies. Those then elected held for a term ending January 1, 1901. Thenceforward the commissioners were to be elected by the people at the general election, the first election to be in 1900, one of them for a term of two years, another for a term of four years, and another for a term of six years. At all subsequent elections the term of the person elected shall be six years. The duties of this board are minutely specified,—very similar to those of the railroad commissioners with respect to the railroad, steamboat, or canal companies and express and telegraph companies,—and adds to these supervision over telephone companies, building and loan associations, sleeping-car companies, and banks. A separate, distinct provision in the act is "to perform all the duties and exercise all the powers imposed or conferred by chapter 320, Public Laws of 1891, and the acts amendatory thereto." Neither this act,—which, by the way, was made of force the day after the repeal of the railroad commission act,—nor, as has been seen, this last-named act itself, say anything whatever about the assessment and taxation of railroad property. The cor-

poration commission proceeded to assess for taxation the property of the complaining railroad companies, and the question was made as to the right of the commission so to do.

Unaided by any decision on this point of the court of last resort in North Carolina, the conclusion was reached that it had no such power. This power of assessment was intrusted to the commissioners elected under chapter 320, Laws 1891, and for this purpose they were constituted a board of appraisers. The machinery act of each succeeding year had done this, including that of the year 1899. The legislature of 1899 repealed that act in toto, so far as language and intent could do so. The conclusion then seemed inevitable that the act was in fact repealed. Besides this, one day after that act was said to be repealed the legislature put in force the corporation commission act, by which they declared their purpose to establish the North Carolina corporation commission, by electing then and there three commissioners, to whom was given a different term from that of the railroad commissioners, whose successors would hold for a term differing wholly from the railroad commissioners, who, after one election by the legislature, would thereafter be elected by the people, whose vacancies were filled, not by the governor, but by the board of internal improvements, and who received a different salary, and took a different oath of office. With this light, the conclusion was reached that the act providing for railroad commissioners was repealed; that other officers had been elected, differing in tenure and in other important respects from them; and that, as was stated at bar, two of the former railroad commissioners, having accepted election under the new act, and having taken the oath of office thereunder, necessarily vacated their former office, and there remained but one person who could claim to be a railroad commissioner. So, as he could not act as a board himself, and in fact did not act with any one, and as the corporation commission was not empowered to make the assessment, the conclusion was reached that the supposed assessment was void, and action under it was enjoined.

But, while the case was before this court, there was pending in the courts of North Carolina an action of the state ex relatione Abbott, the railroad commissioner who was not elected on the corporation commission, against Beddingfield, who, never having been a railroad commissioner, was elected on the corporation commission. Abbott claimed that he had property in his office, of which he could not be deprived, except by the abolition of the office, and that, so long as the duties of the office were continued, a mere change of the name of the office did not abolish it or extinguish his right to it; that the corporation commission was but the railroad commission under another name; and that its passage in no way affected his right to his office, and that Beddingfield was an intruder therein. The cause was heard in the court of last resort in North Carolina. That court awarded the office to Abbott, and excluded Beddingfield. Construing the acts quoted above, the court held that the railroad commission act was not repealed in fact; that the corporation commission was the same commission, to all intents and purposes, except the name; that, when the legislature passed it, they defeated

their declared purpose, because, under the law of North Carolina, established by a current of decisions from Hoke v. Henderson, 15 N. C. 1, a public office is property, of which the incumbent cannot be deprived so long as the duties of the office, under whatever name or title, must be performed; that, construing these two acts in pari materia, the corporation commission act was an amendment to the railroad commission act, and that the two commissions were one and the same. They seated Abbott on the corporation commission, and held that he was a component part thereof, by virtue of his office as railroad commissioner. This decision as to the action of the legislature, and the construction put upon the repealing act of 1899 and the corporation commission act, differ toto cœlo from the conclusion reached by this court on the case presented by these bills in equity.

The question now is, what effect should the judgment of the supreme court of North Carolina have upon the action of this court? Ought it to lead to a reconsideration of its opinion, and the recall of its action thereon?

We are bound to presume that, when a question arose in the state court, it was thoroughly considered by that tribunal, and that the decision rendered embodied its deliberate judgment. Cross v. Allen, 141 U. S. 539, 12 Sup. Ct. 67, 35 L. Ed. 843. It is the practice of the supreme court of the United States, whose practice controls all federal courts, to adopt the interpretation given by the highest tribunals of the several states to their respective acts of legislation, where such interpretation does not conflict with the paramount authority of the constitution of the United States, binding on their own courts, or with the fundamental principles of justice and common right. Murray v. Gibson, 15 How. 421, 14 L. Ed. 755. There are exceptions to this rule: When the meaning of a state statute has not become established (Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359; Carroll Co. v. Smith, 111 U. S. 556, 4 Sup. Ct. 539, 28 L. Ed. 517); when the decision is in conflict with previous decisions of this court; and when the rights which it affects here were acquired before the decision of the state court was made (Carroll Co. v. Smith, supra). In these cases the federal courts exercise their independent judgment. Subject, however, to these exceptions, by comity or by the suggestion of public policy, federal courts adopt the decision of state courts as to the construction and validity of their local laws. In these cases the supreme court will change its decision when the highest tribunal of a state has given a different interpretation. In Morley v. Railway Co., 146 U. S. 162, 13 Sup. Ct. 54, 36 L. Ed. 925, these propositions were affirmed. The rule of construction adopted by the highest court of the state, in construing its own constitution and one of its own statutes, in a case not involving any question re-examinable in this court, under section 25 of the judiciary act, must be regarded as conclusive in this court. Provident Inst. v. Massachusetts, 6 Wall. 611, 18 L. Ed. 907. "The construction given to a statute of a state by the highest judicial tribunal of such state is regarded as a part of the statute, and is as binding upon the courts of the United States as the text." Leffingwell v. Warren, 2 Black,

599, 17 L. Ed. 261. The meaning of a state statute declared by the highest court of a state is conclusive on this court. Randall v. Brigham, 7 Wall. 523, 19 L. Ed. 285. In Kibbe v. Ditto, 93 U. S. 674, 23 L. Ed. 1005, the decision of the highest court of a state, as to whether a statute has repealed the provisions of a former act, was held conclusive on the supreme court. So, also, the decision of the highest court of a state that an act of such state has not been repealed, was followed by the supreme court. Peik v. Railway Co., 94 U. S. 164, 24 L. Ed. 97. Even if there be a diversion of opinion between the members of the state supreme court, such diversion, although a close one, does not prevent the opinion of the majority from becoming the decision of the court, and as such conclusive on the supreme court of the United States. Williams v. Eggleston, 170 U. S., at page 311, 18 Sup. Ct., at page 617, 42 L. Ed., at page 1047. This general current of decisions is approved in the latest case upon the subject. Hartford Fire Ins. Co. v. Chicago, M. & St. P. Ry. Co. (Nov., 1899) 20 Sup. Ct., at page 33, Adv. S. U. S. 33, 44 L. Ed. ——. The case of State ex rel. Abbott v. Beddingfield (N. C.) 34 S. E. 412, involved the construction of the acts of the legislature of 1899, repealing the railroad commission act, and establishing the corporation commission. The language of the court is distinct, and its purpose is clear. It says this: "It is established to be the law of this state by Wood v. Bellamy, 120 N. C. 221, 27 S. E. 113, Day v. State Prison, 124 N. C. 362, 32 S. E. 748, and State v. Jordan, 124 N. C. 683, 33 S. E. 139, that an act is not repealed by the legislature's saying it is repealed, when the same act or contemporaneous acts show that it is not repealed. And it is established to be the law of this state by State v. Jordan, supra, and the authorities there cited, and by Arendell v. Worth (at this term) 34 S. E. 232, that contemporaneous legislation about the same subject-matter is in pari materia, and may be read and construed together. It is established law in this state by Hoke v. Henderson, 15 N. C. 1 (which has been approved in as many as 40 cases decided by this court, as shown in the concurring opinion of Justice Douglas in State v. Jordan), by Wood v. Bellamy, and by Day v. State Prison, supra, that a public office, to which there is attached a salary, is a vested interest,— a property in the holder,—and, as such property holder, he is protected by the law and constitution of this state and the laws and constitution of the United States. It is the settled law of this state (Wood v. Bellamy, Day v. State Prison, and State v. Jordan, supra) that the change of the name from 'railroad commission' to that of 'corporation commission' does not deprive the relator of his office,— his legal and constitutional rights to hold said office. If we consider the two acts of 1899 in pari materia, and read them together, as we are bound to do, unless we disregard all the former decisions of this court, we find that the two acts of 1899 did not repeal the act of 1891 or the act of 1897, but are amendatory thereof; that the re-enactment of the act of 1891 and the act of 1897, amendatory thereof, in the same legislation that it is contended by defendant repealed them, had the effect to continue in force the acts of 1891 and 1897. State v. Williams, 23 S. E. 250." The same court, at the

same term, reiterated its conclusion in Abbott's Case in State v. Owen, 34 S. E. 424; State v. Griffin, Id. 429; State v. Webb, Id. 430; State v. Hill, Id. 432. State ex rel. Abbott v. Beddingfield is distinctly recognized in State v. Southern Ry. Co. (Sept. term, 1899; supreme court of North Carolina) 34 S. E. 527. There can be no doubt as to the conclusion of the supreme court of North Carolina. That court holds that the legislature, however distinctly it may declare its intention to repeal an act, cannot repeal it so as to deprive an incumbent of his office, if by another act it attempts to clothe other persons with his duties; that, therefore, the attempt to repeal chapter 320, Acts 1891, and its amendatory acts, is a nullity; that the new act establishing the corporation commission is but an amendment of the railroad commission act, operative in every respect but the change of officials; and that the persons theretofore elected as railroad commissioners retain all the powers and duties theretofore devolving upon them, undergoing only a change of name to that of corporation commissioners. Under the cases cited above from the supreme court of the United States, it would appear that this course of decisions of the court of last resort of North Carolina, as to the force and effect of their own statutes, on a matter of local law, is obligatory on this court. It must recede from its former ruling, made contemporaneously with these decisions of the North Carolina supreme court, but not brought to its attention. It is so ordered.

In the argument of the case in this court, four grounds were taken against the constitutionality of the action of the corporation commission: (1) It was denied that it had any power to levy the assessment complained of. (2) It was alleged that the method adopted for assessing the value of railroad property differs so materially from that provided for assessing other property in the state of North Carolina as to deny the complainants the equal protection of the law. (3) That there has been in the state of North Carolina a systematic and intentional undervaluation of real and personal property, other than railroad property, with the design to discriminate against railroads, and to cast upon them an undue share of the burdens of taxation, for the purpose of relieving other property of its just proportion of state taxation. (4) That, there being this systematic and intentional undervaluation of real and personal property other than railroad property, the property of complainants has been valued higher than that of individuals.

The first ground has been passed upon, and, in deference to the decisions of the supreme court of North Carolina, is not sustained.

The three other grounds present federal questions, dependent upon issues both of fact and of law. An examination of the affidavits filed leads to no satisfactory conclusion or to an inclination of opinion. They will be referred.

It was stated at the hearing that appeals in three of the cases have been taken to the circuit court of appeals, and have been perfected. These are therefore out of the reach of this court. Ensminger v. Powers, 108 U. S. 302, 303, 2 Sup. Ct. 643, 27 L. Ed. 732.

It is ordered, adjudged, and decreed that each of the cases in the margin, except the three in which appeals have been taken and

perfected, be referred to the Honorable J. E. Sheppard, standing master; that he take all testimony as to the matters of fact therein presented; and that he report the same to this court, and at the same time, merely, however, to aid the court, that he submit his conclusions thereon. It is further ordered that, for the purpose of taking this testimony, he be at liberty to hold references in any part of the state of North Carolina which may suit the convenience of counsel as well as the witnesses; the counsel in the case to submit, for the further order of this court, an order directing when the references shall begin, the time the complainants may need to put in their testimony, the time which the defendants may need to put in their testimony, and the time required for the testimony in reply. The restraining order heretofore made to continue in force, subject to the further order of this court.